JOSEPH KOURY *vs.* PROVIDENCE–WASHINGTON INSURANCE CO.

APRIL 3, 1929.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

BARROWS, J.  Joseph Elias, a common carrier of goods by auto truck, received from plaintiff Koury on April 15, 1924, certain dry goods to carry from Woonsocket to Central Falls.  He left the goods in his locked garage overnight because of failing headlights.  It is conceded that the goods were still in transit.  Through no fault of Elias, the truck and its contents were taken from the garage and the next morning were found about four miles away ruined by fire.  The inference from the facts might be either that it had been stolen or that malicious intermeddlers had taken the truck from the garage.  The parties are agreed, however, that the goods were destroyed by fire.

Elias was insured in defendant company under a policy termed "Motor Truck-Merchandise Floater Truckmen's Form."  The policy has a statement in large type that it insures against damage to the goods caused by several different kinds of happenings, one of which is fire.  It has a similar statement as to losses which it does not cover.  The insurance is applicable only while the goods are in transit on

the specific truck. It covers "legal liability of the assured as a carrier. . . . of general merchandise while in the custody and control of the assured." No reference is made to loss by theft or arising from fire in the course of or following theft or malicious interference with the truck or goods. The policy also contains a clause that no suit shall be brought thereon unless the assured has complied with the requirements of the policy and commenced action within twelve months next after the happening of the loss, unless such limitation is contrary to the laws of the State.

After the loss Koury sued Elias and on May 21, 1926, recovered judgment against him as a common carrier for $2,427.65. Execution having been returned unsatisfied, Koury, in February, 1927, brought the present suit claiming the right so to do by statute, Gen. Laws, 1923, Ch. 258, Sec. 7 (3815). Defendant demurred on the ground that plaintiff was not included among those who could bring suit under the terms of the statute. The demurrer was overruled and defendant filed a special plea setting out that suit had not been commenced within twelve months of the loss. Plaintiff's demurrer to this plea was sustained. To both of the above rulings defendant excepted and is here on a bill of exceptions.

The parties then went to trial on stipulated facts supplemented by brief oral testimony. At its conclusion the trial justice denied a motion to direct a verdict for plaintiff and directed a verdict for defendant saying that the truck had been stolen; that theft insurance was different from fire insurance; that assured's legal liability was caused by theft and not fire. He further said that the policy covered the goods only when in the custody and control of the insured and that custody and control meant that the truck was where the insured could protect the property from fire or theft; that when stolen such protection could not be given and therefore the policy had ceased to be of effect when the goods were burned.

Plaintiff is here on exception to denial of his motion for directed verdict and also on exception to the granting of defendant's motion that a verdict be directed in its favor. Defendant, though having a verdict, asserts that if the verdict in its favor should prove to have been erroneously directed, it still was entitled to succeed on its demurrer or special plea.

We have often said that a verdict should not be directed unless but one inference may be drawn from the facts. That theft not fire caused the loss of the goods, was not the only possible conclusion from the evidence. While the truck and contents may have been stolen, it can not be said conclusively, in view of the admitted destruction of the goods by fire, that theft was the cause of the loss. In fact, the stipulation would indicate that fire following theft caused the loss. That the goods had been stolen before the fire did not establish theft as the cause of the loss. *Hartford Fire Ins. Co.* v. *Owens*, (Texas) (1925) 272 S. W. 611; *Osmond Barringer Co.* v. *Standard Fire Ins. Co.*, 188 N. C. 117. How the fire started is not shown or even that it had any connection with the theft other than that it occurred at the place to which the thief had taken the goods. It was error to base a directed verdict for defendant on the ground that the loss was caused by theft and not by fire.

The vital question for determination is the construction of the words "custody and control" in this policy. Defendant urges that the words mean substantially "custody and possession" and cites cases where goods covered while in "possession of the insured" were held not to be within the terms of the policy unless they were in insured's physical possession. *Hunter* v. *Royal Ins. Co. Ltd.*, 209 App. Div. 15; *Williams* v. *Ins. Co.*, 184 N. C. 268; Huddy on Automobiles, (8th ed.) Sec. 996; Berry on Automobiles, (5th ed.) Sec. 2009. Defendant correctly asserts that the location of the goods insured is a material feature of the insurance policy. *Lyons* v. *Providence Washington Ins. Co.*, 14 R. I. 109. Defendant also asserts that whatever technical meaning

may perhaps be applied to the word "custody" when the word "control" is added we pass into the realm of common or popular meaning and find that the words mean actual power over the property, "power of direction or guidance." Defendant cites *Nessen Lumber Co.* v. *Bennett Lumber Co.*, 223 Mich. 349, where in a garnishment statute "custody and control" were held equivalent to possession. The North Carolina case above cited should be read in connection with the case of *Barringer* v. *Standard Fire Ins. Co.*, *supra*, holding that a policy which by its terms became unenforcible upon change of title or possession was not rendered void merely by theft. It is to be noted that in the policy before us the location of the goods was unimportant so long as they were upon the carrier's truck in transit and within twenty miles of Woonsocket. Examination of the *Nessen* case discloses that the section under consideration plainly showed from the context that custody and control were equivalent to possession. The case hardly sustains the proposition that custody and control always mean possession.

In the case before us we are trying to find the meaning of a contract made by the parties. Its language was selected by the insurer. The meaning of the words custody and control is open to different interpretations. Being ambiguous the language should be construed in favor of the assured, *Inventasch* v. *Superior Fire Ins. Co.*, 48 R. I. 321, at 331, and we must consider legal connotations as well as colloquial or common meanings of custody and control.

The language of an insurance policy should be construed liberally in order to accomplish the purposes for which it was made. 32 C. J. 1152; 36 C. J. 1061; Cooley, Briefs on Ins. Vol. 1, pp. 632, 636. It is legitimate, therefore, to examine the whole contract to ascertain the purpose for which it was made. Its terms are suggestive of general coverage against fire loss for which the carrier may be legally liable while goods are in transit. Loss by fire ordinarily is no excuse to the carrier and this policy is an attempt

to insure the truckman against such loss. For its own protection the insurance company has qualified the coverage in certain respects. It had the right if the truckman would accept such a contract to narrow its liability to the smallest limits. The company could have confined its liability to property in the carrier's actual possession. It could have excluded liability if the truck was stolen, wrongfully taken or if otherwise its physical possession was taken from Elias. It did not do so and having contracted to insure the carrier in terms which may fairly be held to create a broad coverage we are not disposed to narrow those terms by construction.

A carrier does not come into custody and control of goods for transit involuntarily; nor does it part therewith involuntarily, except by operation of law. This carrier lawfully came into custody and control of these goods. That lawful custody and control so far as concerned the carrier's legal liability never ceased. The carrier became absolutely liable for these goods until someone obtained superior legal rights of custody and control and it was partly for loss under circumstances where due care would not be an excuse, that the carrier took the insurance policy. It seems to us that a construction of these words favorably to the insured requires recognition that the insured is covered so long as the goods are within his legal custody and control. Adoption of defendant's construction would so far reduce the insurer's liability as to render the policy a very small protection to a truckman. The result of defendant's strict construction of the language would be to protect the carrier only while he had actual physical dominion over the property in transit. We can not believe that the parties so intended. Would it be seriously urged that if the carrier left the truck in the street while he delivered certain goods and a fire occurred in his absence as a result of the carelessness of a passerby, that the policy was not in force? Would it be urged that if a thief who intended to steal the car had merely taken possession of the car in plaintiff's garage and a fire occurred that the policy was not intended to apply?

Would it be claimed that if a highwayman, or mischief maker, ordered the truck driver while en route to dismount and then got upon the seat to drive off and a fire immediately ensued, the policy was voided? Legally in each of these cases the truckman never lost his custody and control, although actually he was not in possession and in a position to protect the property. If it should be conceded that the policy is still in force where the truckman loses his truck by the taking of the highwayman, is the situation altered in principle because the highwayman has driven the car four miles when the fire occurs? In view of these and other instances which will readily occur, it seems to us that if defendant company did not intend to cover the carrier while it had legal custody and control of the goods it should clearly have so stated in the policy.

We see no merit in defendant's contention that Chapter 258, Sec. 7 (3815) may not be availed of by this plaintiff. The language of the statute is broad. Nothing indicates that it is to be confined to personal injury, tort or automobile accident cases as urged by defendant.

Nor is there merit to the contention that this suit may not be brought because more than twelve months have elapsed since the loss. That provision of the policy does not bar all suits after one year. *Messler* v. *Williamsburg City Fire Ins. Co.*, 42 R. I. 460. It is directed at the insured. It does not seek to cover a statutory action which is derivative. In the nature of the case if the limitation applied the statute would often be worthless to one in the situation of this plaintiff. That the limitation is not intended to be applicable in all cases is seen from its qualifications if in contravention of state laws and, even if it were intended to be all inclusive, it might be void under G. L. 1923, Ch. 258, Sec. 7. We recognize the propriety of provisions calling for expeditious prosecution of claims and the reasonable interpretation of the clause as applied to this plaintiff is that plaintiff must sue upon the policy within one year after the return of his execution unsatisfied. This plaintiff did and

no error was made in sustaining the demurrer to defendant's special plea.

Defendant's exceptions to the overruling of his demurrer to the declaration and to the sustaining of a demurrer to his special plea are overruled.

In our opinion the court erred in directing a verdict for defendant and plaintiff's exception thereto is sustained.

Plaintiff's exception to refusal of the trial court to direct a verdict for him remains to be disposed of. It is true that the chief question argued by counsel concerned the legal construction of the terms of the policy. To facilitate consideration of this problem, most of the facts were stipulated. They were tersely stated for the purposes of the present case and it was agreed "without prejudice to the rights of either party to insist or prove otherwise in any other suit or action, that said Joseph Elias took no part in, and had no knowledge of, the removal of said truck from the garage or the destruction thereof." For the reason that the proximate cause of the loss may be a question open to dispute and that the possible defense of collusion was reserved to defendant, it would have been improper for the court to direct a verdict for plaintiff. His exception to the refusal of the court so to do is overruled.

The case is remitted to the Superior Court for a new trial.

STEARNS, J., dissents.

*John R. Higgins, Alfred H. Lake,* for plaintiff.

*William H. Edwards, Edward Winsor, Edwards & Angell,* for defendant.