## NATIONAL FIRE INS. CO. v. DAVIS.
### No. 2442.

Court of Civil Appeals of Texas. Eastland.
March 3, 1944.

Rehearing Denied April 7, 1944.

Thompson, Knight, Harris, Wright & Weisberg, of Dallas, for appellant.

Ratliff & Ratliff, of Haskell, for appellee.

FUNDERBURK, Justice.

In this suit by Charles O. Davis against National Fire Insurance Company to recover upon an insurance policy for loss, consisting of damages to merchandise, contained in a truck, caused by the overturning of the truck while in transit from Rule, Texas, to Fort Worth, Texas, the court, in a non-jury trial, gave judgment for plaintiff, awarding him recovery in the principal sum of $663.83.

The only question presented for decision is whether the merchandise at the time the truck overturned was "in the custody of the assured" within the meaning of a limitation of coverage in the policy.

The facts as far as developed were undisputed. Gay, an employee of plaintiff and driver of the truck, stopped a few miles from Forth Worth and went into a roadside eating establishment to get something to eat. He left the truck unattended, facing toward Forth Worth, with motor running in order to charge weak batteries. In about fifteen or twenty minutes he was informed the truck had disappeared. It was found overturned upon the highway, back the other way from Fort Worth, approximately 500 yards up grade from where it had been stopped. It was undisputed that the only reasonable inference from the facts was that the truck could not have moved from the place where it was left by the driver to the place where it was overturned; except by human agency. The driver gave no one permission to move the truck.

The provision of the policy that the merchandise was insured "only while in the custody of the assured" was but one of several limitations upon the general coverage of the policy. One was that the "goods and merchandise" should be "lawful." Another, that the goods and merchandise should be "the property of the assured or sold by them [him?] and in course of delivery." Yet another was that the merchandise should be "actually in transit within the limits of the U.S. and Canada." Another was that the merchandise was insured only "while contained in or on" the thereinafter described "motor truck and/or trucks owned and operated by the assured." (There was a provision for substitution of trucks not here important.)

An express provision of the policy was: "This Policy does not insure * * *

"(d) While the property insured hereunder is located:

"(1) In or on the premises of the Assured.

"(2) In any garage or other building where the truck or trucks herein described are usually kept."

The words "possession" and "custody" each have several different meanings. As to the former it has been said that "both in common speech and in legal terminology, there is no word more ambiguous in its meaning than possession." National Safe Deposit Co. v. Stead, 232 U.S. 58, 34 S.Ct. 209, 212, 58 L.Ed. 504. In the same connection it was said: "Custody may be in the servant and possession in the master." Id. We think, as will presently appear, the inquiry may well be confined to consideration of the meaning of "custody" as involved in any possible distinction between custody and possession. "Custody", according to 1 Bouv. Law Dict., Rawle's Third Rev., p. 741, "is the care and pos-

session of a thing." Webster's International Dictionary defines "custody" as "A keeping or guarding; care, watch, inspection, for keeping, preservation, or security. * * * control of a thing or person with such actual or constructive possession as fulfills the purpose of the law or duty requiring it." The Century Dictionary gives this definition: "Keeping or guardianship; charge * * *." Corpus Juris Secundum, under the heading of "Custody", as applied to things, says: "It means to have in charge or safe-keeping, connotes control, and includes as well, although it does not require, the element of physical or manual possession, implying a temporary physical control merely, and responsibility for the protection and preservation of the thing in custody. * * * The term * * * carries with it the idea of the thing being within the immediate personal care and control of the person to whose custody it is subjected; charge; charge to keep, subject to order or direction; immediate charge and control and not the final absolute control of ownership." 25 C.J.S. p. 70.

Under the heading of "Custody of property", the same authority says: "The keeping of property by one who is charged with or who assumes responsibility for its safety; the care and charge of property for one who retains the right to control it; the charge to keep and care for the owner, subject to his order and direction, without any interest or right therein adverse to him; such a relation toward it as would constitute possession if the person having custody had it on his own account." Id.

As to "possession", 2 Bouv. Law Dict., Rawle's Third Rev., p. 2635, defines the word as: "The detention or enjoyment of a thing which a man holds or exercises by himself, or by another, who keeps or exercises it in his name." Webster's International Dictionary defines the word as follows: "Act, fact, or condition of a person's having such control of property that he may legally enjoy it to the exclusion of all others having no better right than himself. * * *." Among many definitions, Corpus Juris gives a very comprehensive one as follows: "The detention and control of the manual or ideal custody of anything which may be the subject of property, for one's use or enjoyment, either as owner or as the proprietor of a qualified right in it, and either held personally or by another who exer-

cises it in one's place and name;" 49 C.J. 1093.

These definitions, it seems to us, warrant the observation of the Missouri Court that "all the definitions contained in recognized law dictionaries indicate that the element of custody and control is involved in the term 'possession.'" State v. Lane, 221 Mo. App. 148, 151, 297 S.W. 708, 709.

For examples of decisions noting the distinction between custody and possession, in addition to National Safe Deposit Co. v. Stead, supra, see: Security Ins. Co. et al. v. Sellers, etc., Motor Co., Tex.Civ.App., 235 S.W. 617; United States v. One Ox-5 etc., Airplane, D.C., 38 F.2d 106; Holebrook v. State, 107 Ala. 154, 18 So. 109, 54 Am.St.Rep. 65; Tripp v. United States Fire Ins. Co. of N. Y., 141 Kan. 897, 44 P. 2d 236.

■ There could be no reasonable contention, we think, that the truck was not, in the true sense of the word, in the custody of the driver Gay at the time he stopped for the purpose of entering the eating place. But the limitation provided by the policy is that the merchandise (in the truck) be in the custody of the "Assured." Gay was not the Assured, and if the custody was in Gay in the strict sense of the word, as above defined, then it was not in the Assured. In that sense, if it ever was in the custody of the Assured, such custody was transferred from the Assured to Gay at least at the beginning of the trip from Rule. If, therefore, the word "custody", as used in the policy provision in question, is used in the sense of "custody" as contradistinguished from "possession", then the insurance was not in effect at any time from the beginning of the trip. The policy, however, shows it was contemplated that the insurance might cover merchandise in more than one truck. It was bound to have been in contemplation of the parties that the custody of the insured property, within the coverage of the policy, might be in a servant. If so, that, in our opinion, only shows that the word "custody" was not used in the sense that distinguishes custody from possession, but was used in the more comprehensive sense of possession, which is to say: In such sense that possession by the Assured could co-exist with custody in the servant. If this deduction is warranted, then it follows, we think, that the act of the unknown person or persons by which Gay's custody of the property was temporarily interfered

with, or interrupted, did not have the effect of transferring the possession of the insured to the unknown person or persons who moved the truck within the intention of said policy provision.

The conclusion above stated is strengthened, we think, when other provisions of the policy are considered. The policy did not require the Assured to be the owner of the property. One alternative to required ownership was that the property, although sold, be "in course of delivery." Under the policy if Assured had sold the property, he could, except for the limitation in question, nevertheless have preserved the insurance by loaning the truck, containing the merchandise, to an independent contractor to make delivery. It therefore cannot be urged that the limitation provision was without possible effect.

But the conclusion that the word "custody" was used in the policy in the sense of "possession" in contradistinction to "custody", is not alone conclusive of the question for decision. It may, nevertheless be plausibly argued that theft of the truck containing the merchandise would have the effect of terminating assured's possession with the result that when it was overturned it was not in assured's possession. In our criminal laws this would undoubtedly be true. P.C.Art. 1410. However, the policy in question does not insure against theft, and hence, we think, analogies to the operation of penal laws relating to theft are not necessarily controlling.

The ambiguities in the word possession before referred to are, of course, still present when by construction it is determined that the word custody in the particular connection means the same as possession. In an insurance policy ambiguities, at least when not cleared up by application of other rules of construction, are resolved in favor of the insured and against the insurer. One not unreasonable construction of the word custody, in the sense of possession, is that legal possession was meant. The intention expressed by the policy in question may have been to exclude liability, so far as affected by possession only, if Assured relinquished his legal possession to another so that the latter by virtue of such relinquishment had legal possession. A thief, of course, would not have legal possession, and hence, the only legal possession would remain in Assured. Such, we think, was the principle which ruled the decision of the Supreme Court of Rhode Island in Koury v. Providence-Washington Ins. Co., 50 R.I. 118, 145 A. 448, 449. That case, the nearest like the present of any which has been cited, or we have been able to find, differs from this case only in these respects: (1) The policy indemnified Assured against the liability of a carrier, (2) the limitation was "while in the custody and control of the assured", and (3) the loss was by fire after the motor vehicle had been stolen from a garage or taken out by a trespasser or malicious meddler. In our opinion no material distinction results from the addition of the words "and control" to the word "custody." It seems to us to be likewise immaterial, that in that case the overall coverage was indemnity against losses to a carrier, while in this case, the over-all indemnity is against personal losses of the same nature, sustained by the Assured. The limitation upon the over-all coverage in one case would, it seems to us, justify no different construction than the same kind of limitation in the other case, since the purpose of each limitation was to except from the over-all coverage just what was agreed to be excepted. The Rhode Island Court, citing the holding in Nessen Lumber Co. v. Bennett Lumber Co., 223 Mich. 349, 193 N.W. 789, that "custody and control" as there involved were equivalent to possession, further decided that legal possession was meant and concluded as follows: "Legally in each of these cases [a number of hypothetical cases] the truckman never lost his custody, although actually he was not in possession and in a position to protect the property." Id. The Court further reasoned: "If it should be conceded that the policy is still in force where the truckman loses his truck by the taking of the highwayman, is the situation altered in principle because the highwayman has driven the car four miles when the fire occurs? In view of these and other instances which will readily occur, it seems to us that if defendant company did not intend to cover the carrier while it had legal custody and control of the goods, it should clearly have so stated in the policy." Id.

We recognize that the construction contended for by Appellant would not be an unreasonable one, but it seems to us that the same may be said of the other construction. It is our conclusion that the rule of construction applicable to cases like this— i.e. in favor of the Assured and against the Insurer—should rightly be determinative

in favor of the adoption of the construction we have above indicated.

Being of opinion that the Court did not err, and that the judgment should be affirmed, it is accordingly so ordered.