975 P.2d 711

**NATIONAL BANK OF ARIZONA, a national banking association, Plaintiff–Appellant,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a foreign corporation, Defendant–Appellee.**

No. 1 CA–CV 98–0031.

Court of Appeals of Arizona, Division 1, Department B.

March 16, 1999.

White, Cummings & Longino, P.C. by David L. White Robert W. Blesch, Phoenix, for Plaintiff–Appellant.

Jennings, Haug & Cunningham by William F. Haug Jorge Franco, Jr., Phoenix, for Defendant–Appellee.

## OPINION

RYAN, Judge

¶ 1    National Bank of Arizona ("NBA") sought a declaratory judgment against St. Paul Fire and Marine Insurance Company ("St.Paul") regarding a Directors & Officers Liability Policy ("D & O Policy") NBA purchased from St. Paul. NBA alleged that its D & O Policy provided coverage for all costs, charges, and expenses NBA incurred in defending two lawsuits against it.   In both lawsuits NBA was named as a defendant, but none of NBA's directors or officers were named as defendants.   On cross-motions for summary judgment, the trial court ruled in favor of St. Paul. We affirm, holding that because no claim was made against any director or officer, the D & O policy was not triggered.

## I.

¶ 2    In December 1991, NBA purchased from St. Paul a D & O Policy.   Under this policy, NBA was the only named insured. The D & O Policy's Corporate Indemnification coverage provided that St. Paul would reimburse NBA for sums that NBA "may be required or permitted to pay" to its directors or officers arising out of claims made against them.   The policy's coverage of Directors' and Officers' Liability provided that St. Paul would pay for losses arising out of any claims made against NBA's directors and officers. For Directors' and Officers' Liability, the policy defined "Loss" in part as "any amount the Insured is obligated to pay as respects his legal liability . . . ."

¶ 3    In June 1994, the first lawsuit, the Kesselman lawsuit, was served on NBA. The Kesselman plaintiffs were trustees and custodians of either profit sharing plans or trusts. Their complaint alleged that NBA was negligent because its representatives knew or should have known of misappropriation of trust account funds and overdrafts of its Charter Title escrow trust accounts.   None of NBA's directors or officers were among the various defendants named.

¶ 4    The Kesselman plaintiffs sought to recover damages, costs, and attorney's fees from NBA, but the trial court granted NBA's motion for summary judgment.   This court affirmed, and the Arizona Supreme Court denied the Kesselman plaintiffs' Petition for Review.   NBA incurred costs, charges, and expenses in the Kesselman lawsuit totaling $69,164.10.

¶ 5    In early September 1995, the second lawsuit, the First American lawsuit, was filed against NBA. First American alleged that NBA violated the Uniform Fiduciaries Act by assisting persons at Charter Title, First American's agent, in converting customer funds for the personal benefit of insiders at Charter Title.   Again, only NBA was named as a defendant;   none of its directors and officers were sued.

¶ 6    Two weeks following the filing of the First American lawsuit, NBA's attorney submitted a copy of the First American complaint to St. Paul's agent in order to verify

coverage under NBA's D & O Policy. St. Paul denied coverage because no NBA directors or officers were named as defendants, and the policy did not provide coverage for the corporate entity itself, except to the extent required or permitted to indemnify its directors and officers.

¶ 7 NBA then answered the First American complaint and defended that lawsuit. NBA and First American eventually settled and the case was dismissed with prejudice. NBA incurred costs, charges, and expenses totaling $262,910.04.

¶ 8 In December 1996, NBA requested under its D & O Policy reimbursement for the costs, charges, and expenses it had paid in defending the First American and Kesselman lawsuits. In February 1997, St. Paul again denied coverage under NBA's D & O Policy for the expenses of the two lawsuits because none of NBA's directors or officers were named as defendants or placed at risk of being found individually liable in either suit.

¶ 9 After St. Paul denied coverage the second time, NBA brought this declaratory judgment action seeking coverage or reimbursement under its D & O Policy for the costs incurred in the defense of the First American and Kesselman lawsuits. St. Paul filed a motion for summary judgment, arguing that it did not owe NBA reimbursement under NBA's D & O Policy because none of NBA's directors or officers were named as defendants. NBA filed a cross-motion for summary judgment.

¶ 10 The trial court granted summary judgment in favor of St. Paul. The court found that because the underlying suits were not filed against the directors and officers but against the corporate entity, no claims were made against the directors and officers. Since the directors and officers were not personally exposed to liability in the underlying lawsuits and the policy does not cover wrongful acts of the corporate entity, there was no loss for which the D & O Policy provided coverage.

¶ 11 NBA appeals, contending that because the directors' and officers' actions gave rise to the underlying lawsuits, the expenses of defending those lawsuits fell within the coverage of its D & O Policy. We have jurisdiction under Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B).

## II.

¶ 12 In reviewing a summary judgment, we review the facts *de novo* and in the light most favorable to the party against whom summary judgment was granted. *Saenz v. State Fund Workers' Compensation Ins.*, 189 Ariz. 471, 473, 943 P.2d 831, 833 (App.1997). The interpretation of an insurance contract, including whether its terms are ambiguous or uncertain, is a question of law, which we may determine independently of the trial court's conclusions. *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982); *Thomas v. Liberty Mut. Ins. Co.*, 173 Ariz. 322, 324, 842 P.2d 1335, 1337 (App.1992).

¶ 13 "[W]hen a question of interpretation arises, we are not compelled in every case of apparent ambiguity to blindly follow the interpretation least favorable to the insurer." *State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 257, 782 P.2d 727, 733 (1989); *see also Nichols v. State Farm Fire & Cas. Co.*, 175 Ariz. 354, 356, 857 P.2d 406, 408 (App.1993). We determine the meaning of a clause subject to different interpretations by examining the language of the clause, the purpose of the transaction as a whole, and public policy considerations. *Wilson*, 162 Ariz. at 257, 782 P.2d at 733. "[T]he policy must be read as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions.'" *Sparks*, 132 Ariz. at 536, 647 P.2d at 1134 (quoting *Federal Ins. Co. v. P.A.T. Homes, Inc.*, 113 Ariz. 136, 139, 547 P.2d 1050, 1053 (1976)).

¶ 14 In determining whether an ambiguity exists, we examine the language from the viewpoint of one not trained in law or in the insurance business. *Id.* at 534, 647 P.2d at 1132; *Thomas*, 173 Ariz. at 325, 842 P.2d at 1338. When the policy language is clear, we may not invent ambiguity and then resolve it to find coverage where none exists under the policy. *Security Ins. Co. of Hart-*

ford v. Andersen, 158 Ariz. 426, 428, 763 P.2d 246, 248 (1988). We are to construe provisions of insurance policies according to their plain and ordinary meaning. *Sparks*, 132 Ariz. at 534, 647 P.2d at 1132; *Thomas*, 173 Ariz. at 325, 842 P.2d at 1338.

■ ¶ 15 D & O Polices are designed to protect directors and officers from losses resulting from claims made against them in their official capacity as directors and officers. 9 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 131:31, at 131–36 (1997). The liability coverage of a D & O Policy may directly cover the directors and officers involved, or it may be provided to the corporation, which indemnifies its directors and officers. *Id.* Generally, a D & O Policy obligates the insurer to reimburse expenses incurred in defending claims against the insured. *Id.* "Under general principles of insurance law, '[a] D & O insurer is responsible for only the loss attributable for liability imposed by law upon the named insureds . . . [and] has no responsibility for liability imposed on the corporation for its wrongful acts . . .'" *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1432 (9th Cir.1995) (alterations in original) (quoting William E. Knepper & Dan A. Bailey, *Liability of Corporate Directors and Officers*, § 17.06, Supp. at 246 (4th ed. 1988 & Supp.1992)).

■ ¶ 16 St. Paul argues that because neither First American nor the Kesselman plaintiffs named any director or officer in their lawsuits, the plain language of the policy precludes coverage. NBA, however, contends that the claims against NBA in the two lawsuits were based solely on the acts, errors, omissions, and breaches of duty that NBA's officers and directors allegedly committed while acting in such a capacity, and that no claims were asserted against NBA for which it could be liable independent of the actions of its officers and directors. Therefore, since NBA could not have acted independently of the board and officers, the policy should cover NBA's losses. In other words, NBA argues that a "claim," as that term is used in the policy, was made against its officers and directors, even though the plaintiffs in the First American and Kessel-

man lawsuits did not seek to recover against the directors and officers personally.

■ ¶ 17 NBA's D & O Policy does not define the term "claim." Although Arizona courts have not defined what constitutes a "claim" in insurance policies, other courts have defined the term. A claim is a demand for relief, payment, or something as a right, or as due. *See Windham Solid Waste Management Dist. v. National Cas. Co.*, 146 F.3d 131, 135 (2d Cir.1998) (finding that a claim may be something other than a formal lawsuit, but that it requires a specific demand for relief); *F.D.I.C. v. Booth*, 82 F.3d 670, 677 (5th Cir.1996); *MGIC Indem. Corp. v. Home State Sav. Ass'n*, 797 F.2d 285, 288 (6th Cir.1986); *Fremont Indem. Co., Inc. v. California Nat'l Physician's Ins. Co.*, 954 F.Supp. 1399, 1403 (C.D.Cal.1997); *In re Ambassador Group, Inc. Litig.*, 830 F.Supp. 147, 155 (E.D.N.Y.1993); *Bensalem Township v. Western World Ins. Co.*, 609 F.Supp. 1343, 1348 (E.D.Pa.1985); *Safeco Title Ins. Co. v. Gannon*, 54 Wash.App. 330, 774 P.2d 30, 33 (1989).

¶ 18 The word claim "imports the assertion, demand, or challenge of something as a right; the assertion of a liability to the party making it to do some service or pay a sum of money." *San Pedro Properties, Inc. v. Sayre and Toso, Inc.*, 203 Cal.App.2d 750, 755, 21 Cal.Rptr. 844 (1962), *disapproved on other grounds, Gyler v. Mission Ins. Co.*, 10 Cal.3d 216, 110 Cal.Rptr. 139, 514 P.2d 1219 (1973). "[W]hen the terms 'claim' and 'loss,' are intimately connected in a policy, then a 'claim' is a 'demand which if sustained necessarily results in a loss.'" *Booth*, 82 F.3d at 675.

¶ 19 In cases lacking a demand for money or services, the courts have determined that a "claim" had not been made. *See Hoyt v. St. Paul Fire and Marine Ins. Co.*, 607 F.2d 864 (9th Cir.1979) (applying Arizona law, the court held that the letter sent to the insured was simply a request for information and an explanation and therefore not a claim); *In re Ambassador Group*, 830 F.Supp. at 147 (finding that a letter asserting a wrongdoing but lacking a specific demand for relief did not amount to a claim); *Safeco Title Ins. Co.*, 774 P.2d at 30 (finding that

there was no claim under the policy because the facts did not show a demand for compensation).

¶ 20   It is undisputed that no officer or director was ever in jeopardy of paying any money damages to either Kesselman or First American.   Under these circumstances, the plain language of the policy precludes coverage for NBA.

¶ 21   St. Paul agreed, under the Corporate Indemnification provision, to reimburse NBA for sums NBA "may be required or permitted to pay" to its directors and officers arising out of claims made directly against the directors and officers, not against NBA. Under the Directors' and Officers' Liability provisions, St. Paul agreed to pay NBA its "Loss" arising out of claims made against its directors and officers.   "Loss" is defined in part as "any amount the Insured is obligated to pay as respects his [director's or officer's] *legal liability.*"   (Emphasis added.)   This latter provision clearly contemplates that NBA would be reimbursed only for sums it pays on behalf of the directors and officers for their legal liability.   Because NBA was neither required to pay any sums for claims made directly against the directors and officers nor required to indemnify any director or officer, NBA's losses are not covered under the clear terms of the policy.

¶ 22   Although we have found no Arizona cases on point, two cases from other jurisdictions support our analysis.   In *In re Liquidation of WMBIC Indemnity Corp.,* 175 Wis.2d 398, 499 N.W.2d 257 (App.1993), Farmers Savings Bank sought reimbursement from its insurer, WMBIC Indemnity Corporation, under its D & O Policy for loss it sustained in settling a claim by a banking customer who alleged that the bank, through its agents, had breached a contract.   The bank and two of its officers were named as defendants; however, WMBIC was obligated only to pay the directors' and officers' losses and not the losses suffered by the bank on account of the actions of the directors and officers. *Id.* at 258–59, 261–62.

¶ 23   The court stated that D & O policies are generally issued to protect the bank's directors and officers from third-party claims made against them in their capacity as officers or directors. *Id.* at 260 (citing 2 Rowland H. Long, *The Law of Liability Insurance,* § 12A.01[1] (1992)).   "[A] prerequisite for coverage is the insured's—the director's or officer's—legal obligation to pay for the claim made against him or her." *Id.* at 261. The court reasoned that a D & O policy would be transformed into a corporate liability policy if coverage were provided where the insured officers and directors were not legally obligated to pay. *Id.* at 262.   "Such an interpretation would be contrary to the purpose of D & O policies which ... exist to shield directors and officers—not their employer/principal—from personal liability." *Id.*

¶ 24   In *Olympic Club v. Those Interested Underwriters at Lloyd's London,* 991 F.2d 497 (9th Cir.1993), the Olympic Club, an indoor athletic, dining, recreational, residential, and health facility, which restricted its membership to white male citizens of the United States, was sued by the city for discrimination. *Id.* at 498.   The Club subsequently brought an action against its insurer, Lloyd's, to establish a duty to defend.

¶ 25   The Club argued that a claim of unlawful discrimination against the Club necessarily constituted a claim against its directors, officers, or employees, because they are the instruments through which the Club acts. *Id.* at 500.   In denying coverage, the court stated that "[i]f this interpretation governed, the Club's directors, officers, and employees would be liable for every corporate act undertaken by the Club and Lloyd's would be obligated to pay defense costs for *every* suit against the Club." *Id.* at 501.

¶ 26   We agree with the reasoning in *WMBIC Indemnity* and *Olympic Club.* In both of the underlying lawsuits against NBA, none of NBA's directors and officers were named as defendants, nor were they subject to any demands for relief, payment, or something as a right or as due.   Because no demands were made against NBA's directors or officers, we conclude that no claim was made against them.   NBA's directors and officers did not face any liability, thus NBA is not entitled to any coverage or reimbursement under its D & O Policy.   To find cover-

age under NBA's D & O Policy under these circumstances would be to transform it into a corporate liability policy.

¶ 27   NBA cites *MGIC Indemnity Corp. v. Central Bank of Monroe, La.*, 838 F.2d 1382 (5th Cir.1988), as support for its contention that its D & O Policy covers the costs and expenses NBA incurred in defending the two underlying lawsuits against it regardless of whether any directors or officers were named as defendants. In *MGIC Indemnity*, the court stated that a claim is made

> by an outside party filing suit on demand, resulting from an act of the officer or director, which demand the bank has denied .... regardless of whether the party making the claim names the director or officer as a party, as long as it is clear to the bank that the claim is based upon an action by a director or officer that falls within the terms of the insurance contract.

*Id.* at 1388. However, *MGIC Indemnity* dealt with a notice of claim issue, not coverage of claims. The court concluded, for the purposes of the D & O policy's notice provision, that when a demand is made on the bank that results from an act of an officer or director, a "claim" is made. *Id.* However, the court did not hold that such a demand under the policy triggered coverage. Thus, NBA's reliance on *MGIC Indemnity* is inapposite.

¶ 28   NBA also relies on *Safeway Stores, Inc. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 64 F.3d 1282 (9th Cir.1995), and *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d at 1424. NBA asserts that these cases support its argument that its D & O Policy should provide coverage because NBA's liability in the underlying suits was derivative of its directors' and officers' actions.

¶ 29   In both *Safeway* and *Nordstrom*, the courts had to determine if it was appropriate to allocate the costs of defense and settlement between the corporation and the directors and officers. *See Safeway*, 64 F.3d at 1286–90; *Nordstrom*, 54 F.3d at 1433–36. In both cases the corporation and its directors and officers were named as defendants. *See Safeway*, 64 F.3d at 1287 ("the settlement costs were an actual out-of-pocket loss to Safeway incurred in defense of its directors and officers"); *Id.* at 1289 ("Safeway also argues that allocation of its defense costs was improper, since all those costs were related to defense of the officers and directors."); *Nordstrom*, 54 F.3d at 1427 ("various groups of Nordstrom shareholders brought class action suits ... against Nordstrom and its directors and officers."). Here, however, claims were brought against NBA only; none were brought against its directors and officers. The premise in *Safeway* and *Nordstrom* is that the directors and officers required a defense because they were sued and in jeopardy of being found liable. This fact, absent in this case, triggered the D & O policies in both *Safeway* and *Nordstrom*. In contrast, NBA's directors and officers were never in jeopardy of being found legally liable. Hence they were never at risk of having to pay defense and settlement costs, and NBA was never at risk of having to indemnify any director or officer. *Cf. Vitkus v. Beatrice Co.*, 127 F.3d 936, 944 (10th Cir. 1997) (D & O policy triggered where director incurred an obligation to pay). As a result, we find NBA's reliance on *Safeway* and *Nordstrom* misplaced.

¶ 30   Finally, NBA relies on *Mutual Insurance Co. of Arizona v. American Casualty Co. of Reading, Pa.*, 189 Ariz. 22, 938 P.2d 71 (App.1996). NBA contends that *Mutual Insurance* stands for the proposition that "facts, not pleadings control coverage." *Mutual Insurance* dealt with the issue of equitable contribution among overlapping insurers. There, more than one policy insured the same parties and same interests. Here, only one policy insures the directors and officers. Thus, there are no competing policies with overlapping coverages insuring the same parties and interests. Accordingly, we find *Mutual Insurance* distinguishable.

¶ 31   Both parties have requested their attorneys' fees and costs on appeal. Because St. Paul is the prevailing party, we exercise our discretion and award attorneys' fees to St. Paul under A.R.S. section 12–341.01. Therefore, attorneys' fees and costs will be

awarded upon St. Paul's compliance with Arizona Rule of Civil Appellate Procedure 21(c).

### III.

¶ 32 Because no claim was made against a director or officer, the D & O Policy was not triggered. Accordingly, we affirm the trial court's grant of summary judgment in favor of St. Paul.

REBECCA WHITE BERCH, Judge, and THOMAS C. KLEINSCHMIDT, Judge, concur.