**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AIRBORNE FREIGHT CORPORATION, a
Delaware corporation dba
Airborne Express Inc,
          *Plaintiff-Appellant,*

v.

ST. PAUL FIRE & MARINE
INSURANCE COMPANY, a corporation,
          *Defendant-Appellee.*

No. 04-35989

D.C. No.
CV-03-02390-RSL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted
July 24, 2006—Seattle, Washington

Filed December 26, 2006

Before: J. Clifford Wallace, Kim McLane Wardlaw, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Wardlaw;
Dissent by Judge Wallace

19763

**COUNSEL**

Michael E. Gossler, Scott E. Feir and Benjamin I. Vanden-Berghe, Montgomery Purdue Blankinship & Austin, Seattle, Washington, for appellant Airborne Freight Corp. d/b/a Airborne Express.

John P. Hayes, Forsberg & Umlauf, Seattle, Washington, for appellee St. Paul Fire & Marine Insurance Co.

**OPINION**

WARDLAW, Circuit Judge:

Airborne Freight Corporation (Airborne) appeals from the district court's grant of summary judgment to Airborne's insurer, St. Paul Fire & Marine Insurance Company (St. Paul), in a breach of contract case. Airborne sought indemnification from St. Paul after it settled lawsuits with National Fulfillment, Inc. (NFI) and Sur La Table for lost and damaged packages; St. Paul refused, citing the deductible and scope of

coverage provisions of the contract. We review the district court's contract interpretation de novo, applying Washington law. *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004). We reverse.

### 1. Care, Custody and Control

On review of a grant of summary judgment, "[w]e are not to weigh the evidence or determine the truth of the matter, but only to determine whether there is a genuine issue for trial." *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006) (internal quotation marks omitted). There are material facts in dispute as to whether the United States Postal Service (USPS) was a covered agent of Airborne and whether Airborne retained responsibility and liability for packages once they were handed off to the USPS for delivery to the final consignee.

[1] The interpretation of the "care, custody, and control" exclusion in *Olds-Olympic, Inc. v. Commercial Union Insurance Co.*, 918 P.2d 923, 931 (Wash. 1996), a case involving a comprehensive general liability policy, provides no assistance in interpreting cargo liability policies, which protect primary carriers for the entire time the cargo is within their physical or legal custody. *See Koury v. Providence-Washington Ins. Co.*, 145 A. 448, 449-50 (R.I. 1929); *Nat'l Fire Ins. Co. v. Davis*, 179 S.W.2d 316, 319 (Tex. Civ. App. 1944); *see also* 11 Couch on Ins. § 154.44 (2006). When the Washington Supreme Court interpreted "care, custody, and control" in *Olds-Olympic* to require that the damaged property be "under the supervision of the insured and [ ] a necessary element of the work involved," it was interpreting a policy exclusion, which Washington courts construe narrowly against the insurer. *Olds-Olympic*, 918 P.2d at 927 ("CGL policies are marketed by insurers as comprehensive and should be strictly construed when the insurer attempts to subtract from the comprehensive scope of its undertaking."); *see also Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005). Here, the term "care, custody, and control" is

found in the "scope of coverage" statement, a part of the policy which is construed liberally in favor of the insured. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 659 P.2d 509, 511 (Wash. 1983). St. Paul's proposed interpretation that "care, custody, and control" requires "supervision" would be inconsistent with the basic purpose and intent of cargo liability insurance, namely to protect the carrier for the entire time it remains liable to the shipper. *See Koury*, 145 A. at 450. Moreover, it would render illusory the specific insurance contract between St. Paul and Airborne, which on its face covers loss or damage by independent third parties in the shipment process.

[2] Nor is "care, custody, and control" dependent on a formal agency relationship between the primary carrier and any independent contractors. A third party carrier serving under contract can function as an "agent" of the primary carrier, even where the primary carrier does not control the manner of the agent's performance and would not be liable for the agent's independent torts on a *respondeat superior* theory. *See O'Brien v. Haffer*, 93 P.3d 930, 934 n.36 (Wash. Ct. App. 2004) (explaining difference between servant and non-servant agents); Restatement 2d of Agency § 1, cmt. e (1958) (same). St. Paul concedes that the insurance policy covered Airborne's legal liability while packages were being processed or delivered by third-party contract agents and common carriers. The record fails to demonstrate that USPS was in a fundamentally different position with respect to Airborne from those whose loss or damage St. Paul concedes would be covered.

[3] Finally, the policy notes that "[i]nsurance is to attach from the moment the Assured becomes responsible and/or liable and continues until such responsibility or liability ceases," a statement consistent with the common understanding of "care, custody and control" in a cargo liability policy. *Cf. Koury*, 145 A. at 450.[1] Although the contract between Air-

---

[1]This legal liability test appears to have been embraced, at least on one occasion, by St. Paul. In response to a question from Airborne's insurance

borne and USPS is not part of the record, the language of the @Home Service Agreement between Airborne and its shippers, the Airborne Express United States Service Guide, and the deposition testimony could allow a reasonable jury to find that Airborne remained financially and legally liable while the USPS was in physical possession of the packages during the final leg of delivery. Construing these facts in the light most favorable to the non-moving party, *Moran*, 447 F.3d at 753, there was a genuine issue of material fact for trial and summary judgment was improvidently granted.

### 2. Per-Claim Deductible

[4] St. Paul asks us to affirm summary judgment on an alternative ground, arguing that the $2,500 deductible in the policy must be applied on a per-package basis. As a matter of law, Airborne's claim for indemnification for its settlement is not precluded by the policy deductible. The policy states that St. Paul will "pay all claims in excess of . . . $2,500 on Section 2 Cargo Legal Liability" after the $500,000 aggregate deductible is reached.[2] The term "claim" is undefined in the policy, but in analogous contract disputes, Washington state courts have followed standard dictionary definitions and held that "the plain, ordinary meaning of claim is a demand for compensation." *Safeco Title Ins. Co. v. Gannon*, 774 P.2d 30, 33 (Wash. Ct. App. 1989); *see also Windham Solid Waste Mgmt. Dist. v. Nat'l Cas. Co.*, 146 F.3d 131, 134 (2d Cir. 1998) (reviewing the interpretation of the term "claim" in insurance case law across numerous states and holding that "[a] claim may be something other than a formal lawsuit" and

---

broker as to whether Airborne could file a claim if there was no bill of lading but by contract, Airborne assumed responsibility, a St. Paul employee responded via facsimile that "there is not a claims problem if no Bill of Lading is issued, but by contract they are liable."

[2]Both parties agree that the $500,000 annual deductible was reached in the relevant policy year.

requires simply "a specific demand for relief"); *Nat'l Bank of Ariz. v. St. Paul Fire & Marine Ins. Co.*, 975 P.2d 711, 714 (Ariz. Ct. App. 1999) ("A claim is a demand for relief, payment, or something as a right, or as due."). This broad definition of "claim," untethered to a single event or occurrence, is also consistent with insurance industry definitions. *See, e.g.*, Harvey W. Rubin, Dictionary of Insurance Terms 85 (4th ed. 2000) (defining "claim" as a "request by an insured for indemnification by an insurance company for loss incurred from an insured peril"); Wash. State Office of the Ins. Comm'r, A Consumer's Insurance Glossary, www.insurance. wa.gov/consumers/glossary.asp (defining "claim" as a "demand for benefits as provided by the policy"). The claims for breach of contract in the NFI and Sur La Table lawsuits, settled for $255,000 and $25,000 respectively, were clearly demands for compensation that derived from the sort of loss envisioned in the contract. As a result, each lawsuit was properly subject to a single deductible.

**[5]** Nothing in the insurance contract indicates that the deductible was intended to apply on a per-package basis, and we will not re-write the policy to accord with one party's unexpressed intentions. *See Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 760 P.2d 337, 340 (Wash. 1988) ("If the language in an insurance contract is clear and unambiguous, the court must enforce it as written . . . ."); *State Farm Fire & Cas. Co. v. English Cove Ass'n*, 88 P.3d 986, 989 (Wash. Ct. App. 2004).[3] St. Paul's emphasis on the definition

---

[3]Were we to conclude that the word "claim" in the policy was in fact ambiguous because it could refer to either each individual lost package or, as Washington law appears to hold, to any demand for compensation by NFI and Sur La Table, then we would attempt to discern and enforce the parties' intent, and could consider their historical practices under the policy. *See Transcon. Ins. Co.*, 760 P.2d at 340. However, while St. Paul proffers evidence of Airborne's historical behavior when charged with individual lost package claims, this would be only marginally relevant to determining whether the parties understood the term "claim" also to incorporate a single lawsuit alleging many lost packages, as well as "lost prof-

of "occurrence" in the policy is entirely beside the point, because the deductible in the St. Paul/Airborne policy applies to "all claims," rather than to individual occurrences causing damage. Given the guidance of the Washington courts that we read exclusion language narrowly, *Phil Schroeder*, 659 P.2d at 511, we agree with the district court that "claim" is unambiguous and affirm its denial of summary judgment on that ground.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

WALLACE, Circuit Judge, dissenting:

The majority makes a strong argument that there are material facts in dispute as to whether USPS was a covered agent of Airborne, and whether Airborne retained responsibility and liability for packages once they had been handed off to the USPS. However, I would not reach the issue. Even though ambiguities in deductible clauses are construed in favor of the insured, *see Witherspoon v. St. Paul Fire & Marine Ins. Co.*, 548 P.2d 302, 308 (Wash. 1976), I am persuaded that under Washington law the deductible in the policy should have been applied on a per-package basis. I would therefore affirm the summary judgment.

"To determine the parties' intent, the court first will view the contract as a whole, examining its subject matter and objective, the circumstances of its making, the subsequent conduct of the parties, and the reasonableness of their respec-

---

its, lost opportunities, and cancellation of existing client accounts." Because this extrinsic evidence would not resolve the ambiguity, we would construe the deductible language against the insurer, as we must, *Witherspoon v. St. Paul Fire & Marine Ins. Co.*, 548 P.2d 302, 308 (Wash. 1976), and we would reach the same result.

tive interpretations." *Transcon. Ins. Co. v. Wash. Pub. Utilities Dist. Utility Sys.*, 760 P.2d 337, 340 (Wash. 1988) (en banc). The consistent four-year historical practice of the parties was to apply a deductible to each individual claim of a cargo loss. An individual loss was never treated as anything but a separate claim involving a separate deductible. A former representative of Airborne conceded during a deposition that if each of the individual claims had been filed rather than as lumped together in a lawsuit, they would "absolutely" have been subject to individual deductibles.

Similarly, each of the 3,538 NFI lost claims was submitted individually to Airborne. NFI created a 98-page document listing all of the lost or damaged packages. There was no "common cause" involving all of the damaged or missing packages. Under Washington law, there were multiple occurrences, each giving rise to its own claim. *See Greengo v. Pub. Employees Mut. Ins. Co.*, 959 P.2d 657, 663-64 (Wash. 1998) (en banc) ("Where there were two collisions, we look to see if each has its own proximate cause. If so then there are two accidents"); *Transcon.*, 760 P.2d at 345 ("We are persuaded by [the] contention that the number of triggering events depends on the number of causes underlying the alleged damage and resulting liability").

The majority concludes that the plain meaning of "claim" is a "demand for compensation," and accordingly that each lawsuit, which combined thousands of individual claims, was a single "claim" for the purposes of the insurance policy. This leads to absurd results. A company in Airborne's position, under the majority's approach, may simply refuse to pay any individual claims that are under the deductible amount until a comprehensive lawsuit is filed, thereby triggering insurance coverage that it would not have secured otherwise. I do not think that this is what the Washington law or the parties intended. I respectfully dissent.