AIRBORNE FREIGHT CORPORA-
TION, a Delaware corporation, doing
business as Airborne Express Inc.,
Plaintiff—Appellant,

v.

ST. PAUL FIRE & MARINE INSUR-
ANCE COMPANY, a corporation,
Defendant—Appellee.

No. 07–35294.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 24, 2008.

Filed Dec. 2, 2008.

Scott E. Feir, Esq., Michael E. Gossler,
Esq., Benjamin I. Vandenberghe, Esq.,
Montgomery Purdue Blankinship & Aus-
tin, PLLC, Seattle, WA, for Plaintiff–Ap-
pellant.

John Patrick Hayes, Esq., Forsberg &
Umlauf, PS, Seattle, WA, for Defendant–
Appellee.

Before: WALLACE, WARDLAW, and
FISHER, Circuit Judges.

### MEMORANDUM *

Airborne Freight Corporation ("Air-
borne") again appeals from the denial of
its motion for summary judgment and the
grant of summary judgment in favor of St.
Paul Fire & Marine Insurance Company
("St. Paul"). We have jurisdiction under
28 U.S.C. § 1291, and we affirm in part,
reverse in part, and remand.

Our prior opinion, 472 F.3d 634 (9th
Cir.2006), stated that genuine issues of
material fact exist as to two questions: (1)
"whether the United States Postal Service

---

* This disposition is not appropriate for publica-
tion and is not precedent except as provided
by 9th Cir. R. 36–3.

[ ("USPS") ] was a covered agent of Airborne" and (2) "whether Airborne retained the responsibility and liability for packages once they were handed off to the USPS for delivery to the final consignee." *Id.* at 635. We clarified that a showing of "care, custody, and control" is not "dependent on a formal agency relationship between the primary carrier and any independent contractors." *Id.* at 636. Moreover, we observed that the provision of the Insurance Policy, stating that "[i]nsurance is to attach from the moment the Assured becomes responsible and/or liable and continues until such responsibility or liability ceases," is "consistent with the common understanding of 'care, custody and control' in a cargo liability policy." *Id.* On remand, although the district court correctly explained that "whether Airborne retained responsibility and liability under the Insurance Policy depends on whether the USPS is considered Airborne's agent under ... Airborne's Service Guide, as incorporated by the @Home Service Agreements," it improperly collapsed the two questions into one: whether the USPS acted as Airborne's "agent" as governed by principles of agency law.

The parties agree that the USPS did not act as Airborne's agent under the law of agency and that St. Paul's coverage extended "from the moment [Airborne] becomes responsible and/or liable and continues until such responsibility or liability ceases." What is in dispute is whether Airborne remained "responsible and/or liable" during the period when the USPS completed the final leg of the delivery process; i.e., whether Airborne retained

legal "care, custody, and control" of its packages while those were being delivered by the USPS. *See Koury v. Providence–Washington Ins. Co.,* 50 R.I. 118, 145 A. 448, 450 (1929) (holding that "the insured is covered so long as the goods are within his legal custody and control"). Airborne remained liable while "its agents" completed the delivery process. Because Airborne's liability was fixed by the @Home Service Agreements with NFI and Sur La Table, which expressly incorporate the limitation of liability clause in Airborne's Service Guide, the meaning of the term "its agents" in that clause is a matter of contract law, not of agency law. *See Tanner Elec. Coop. v. Puget Sound Power & Light Co.,* 128 Wash.2d 656, 911 P.2d 1301, 1310 (1996) (en banc) ("The touchstone of contract interpretation is the parties' intent.").

Applying principles of contract law, we conclude that genuine issues of material fact remain, precluding summary judgment. First, on the question of Airborne's continued liability for packages, there is no evidence that the parties to the @Home Service Agreements intended to define "agent" by incorporation of principles of agency law.[1] Some evidence suggests, however, that Airborne interpreted the term "agent" in the Service Guide to include independent contractors, such as the USPS. The record also indicates that Airborne's insurance broker understood that to be the case; and that he informed St. Paul of the creation of the @Home Service Agreements which would "undoubtedly have an affect [sic] on claims." Lawsuits by NFI and Sur La Table against Airborne for packages lost by the USPS dem-

---

1. While it is true that "[p]arties are generally deemed to contract in reliance on existing law," *Caritas Servs., Inc. v. Dep't of Soc. and Health Servs.,* 123 Wash.2d 391, 869 P.2d 28, 36 (1994) (en banc), this principle "is generally applied in connection with contract 'construction' (determining the legal effect of a contract) rather than contract 'interpretation'

(determining the meaning of words used in a contract)," 11 Richard A. Lord, *Williston on Contracts* § 30:19, 219 (4th ed.1999). In the instant case, the issue is one of contract interpretation—i.e., the meaning of the word "agent," as understood and intended by the contracting parties.

onstrate that NFI and Sur La Table also interpreted the @Home Service Agreements to impose liability upon Airborne during the USPS leg of delivery to the final destination.

Second, as we previously noted, St. Paul conceded that its coverage extended to "Airborne's legal liability while packages were being processed or delivered by third-party contract agents and common carriers." *Airborne*, 472 F.3d at 636. The district court has not yet made a finding as to whether the USPS "was in a fundamentally different position" than these covered entities. *Id.*

On remand, the district court should determine whether, in consideration of all the evidence in the record, and applying principles of contract law, the parties to the @Home Service Agreements interpreted the term "agent" to include independent contractors, such as the USPS. If so, then Airborne retained liability for, and, therefore, *legal* "care, custody, and control" of its packages while they were being delivered by the USPS, and is entitled to summary judgment. If not, then Airborne is entitled to summary judgment only if it can prove that the USPS was not in a fundamentally different position than third-party contract agents and common carriers that were covered under the Insurance Policy; obversely, St. Paul is entitled to summary judgment if it can prove that the USPS was in a fundamentally different position than such entities.

Accordingly, we remand for these further findings and conclusions as to whether Airborne remained liable to its customers for packages mishandled by the USPS.

**AFFIRMED IN PART; REVERSED IN PART and REMANDED. Each party shall bear its own costs.**