(text box: 1) NO. 5-00-0075

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

THE BANK OF CARBONDALE, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellant, )  Jackson County.

)

v. )  No. 99-L-80

)

THE KANSAS BANKERS SURETY COMPANY, )  Honorable

)  Thomas H. Jones,

     Defendant-Appellee. )  Judge, presiding.

________________________________________________________________________

JUSTICE RARICK delivered the opinion of the court:

The plaintiff, the Bank of Carbondale (the Bank), filed a complaint in the circuit court of Jackson County against Leonard Bening and alleged that Bening had failed to pay certain promissory notes.  Bening filed a counterclaim alleging, 
inter alia
, that the Bank, acting through its officers and/or directors, altered the notes.  The counterclaim named the Bank as a defendant but did not name any officer or director.  The defendant, the Kansas Bankers Surety Company (KBS), had issued to the Bank an insurance policy entitled "Director and Officer Legal Defense and Limited Indemnity Policy."  The policy provided that KBS would indemnify any director or officer of the Bank for any loss which the director or officer was legally obligated to pay by reason of any wrongful act in his or her capacity as a director or officer.  The Bank notified KBS of Bening's counterclaim, but KBS refused to provide coverage.  KBS relied on a policy exclusion which provides that KBS is not liable to make payment or provide any defense in connection with a claim against the Bank itself.  The Bank then brought the present action against KBS.  The Bank alleged a breach of contract and further alleged that KBS's failure to provide coverage was vexatious and unreasonable under the provisions of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1998)).  KBS filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 1998)), arguing that the policy in question did not provide coverage to the Bank.  The trial court granted KBS's motion and dismissed the Bank's complaint, finding that the Bank was excluded from coverage under the policy.

On appeal, the Bank argues that the provisions of the insurance policy are ambiguous, requiring the policy to be construed in favor of the Bank and obligating KBS to provide coverage.  Specifically, the Bank maintains that pursuant to section III of the policy, KBS is obligated to indemnify the Bank when a claim is made against an officer or director thereof.  However, under paragraph (b) of section IV, KBS is excused from indemnifying the Bank if a claim is made against it.  The Bank argues that the policy includes no requirement that an officer or director be named a party rather than the Bank.  Thus, the Bank contends, the provisions of section III are in conflict with and contradictory to the provisions of section IV, rendering the coverage provisions of the policy ambiguous.  The Bank contends that although it is the only named defendant in Bening's counterclaim, the counterclaim alleges wrongful acts on the part of the officers and directors.  The Bank maintains that if interpreted as KBS argues, the policy provides no coverage at all.

"Section I

1. The Underwriter *** agrees to indemnify each and every person who was, now is[,] or may hereafter be a Director or Officer of the Bank for loss which the Director or Officer is legally obligated to pay by reason of any Wrongful Act in their capacities of Director or Officer in the Bank arising out of an occurrence Discovered by the Director or Officer during the policy period.

* * *

DEFINITIONS

Section III

***

(b) The term 'Director or Officer' shall mean any duly elected Director or person duly elected or appointed to any position of Bank Management designated by the Board of Directors of the Bank as an Officer.

(c) Wrongful Act shall mean any actual or alleged:

1) error or misstatement; or

2) misleading statement; or

3) act of omission; or

4) breach of duty; or

5) breach of fiduciary duty; or

6) any other act

by the Directors or Officers in the discharge of their duties, individually or collectively, which is claimed against them solely by reason of their being Directors or Officers of the Bank except as excluded from coverage under Section IV.

(d) [']Loss['] shall mean any amount which the Directors and Officers are legally obligated to pay or for which the Bank may be required or permitted by law to pay as indemnity to the Directors and Officers, for a claim or claims made against the Directors and Officers for Wrongful Acts and shall include but not be limited to damages, judgements, settlements and costs, cost of investigation (excluding salaries of officers or employees of the Bank) and defense of legal claims, claims or proceedings and appeals therefrom, cost of attachment[,] or similar bonds.

* * *

EXCLUSIONS

Section IV

***

b) The Underwriter shall not be liable to make any payment or provide any defense in connection with any claim or legal proceedings made against the Bank."

Initially, we must address KBS's claim that the Bank waived its argument that the policy is ambiguous.  KBS argues that the Bank failed to advance such argument in the trial court.  It is well-settled that an argument not advanced in the trial court is waived for purposes of review.  
Reedy Industries, Inc. v. Hartford Insurance Co. of Illinois
, 306 Ill. App. 3d 989, 715 N.E.2d 728 (1999).  The Bank maintains that the pleadings filed with the trial court clearly show that the issue of the policy's ambiguity was central to its claim.  We do not agree.  Nowhere in any of its pleadings does the Bank assert or imply that the language of the policy is ambiguous.  In its reply to KBS's motion to dismiss, the Bank asserted, "[T]he unambiguous language of the preceding Sections of the policy of insurance issued to the [Bank] clearly show that [KBS] was contractually obligated to indemnify the [Bank] for expenses incurred in defending the claims in the Cause Number 93-L-134."  The Bank takes the remarkable position that it raised the issue of ambiguity by asserting that the language of the policy was unambiguous.  Although artful, the Bank's argument is unpersuasive.

Even if we were to consider the Bank's argument, we find nothing ambiguous about the policy language.  In section I, KBS agrees to indemnify the officers and directors for any loss that they are legally obligated to pay by reason of any wrongful act in their capacity as an officer or director.  No coverage is provided for the Bank itself.  Section III(d) defines "loss" as any amount that the directors or officers are legally obligated to pay or for which the Bank may be required or permitted by law to pay as indemnity to the officers or directors for claims made against the officers or directors for their wrongful acts.  Section IV(b) provides that KBS shall not be liable to make any payment or provide any defense in connection with any claim or legal proceeding made against the Bank.  Thus, KBS is liable to the Bank only where the Bank has indemnified an officer or director for claims made against such officers or directors for their wrongful acts.  The policy provides no coverage for the Bank itself, nor does it obligate KBS to defend the Bank in any suit brought against it.  Contrary to the Bank's argument, we find nothing conflicting or contradictory between sections III and IV.  

Although this is a case of first impression in Illinois, courts in other jurisdictions interpreting similar insurance policy provisions have reached the same conclusion.

In 
Clark v. General Accident Insurance Co.
, 951 F. Supp. 559 (D.V.I. 1997), seven condominium owners filed suit against Mountain Top Condominium Association (Mountain Top) and its individual officers and directors, including Nancy Clark, for alleged wrongful actions concerning the distribution of certain insurance proceeds.  Mountain Top had purchased from General Accident Insurance Co. PR, Ltd. (General Insurance) an "all risk" insurance policy that included general liability insurance, as well as directors and officers liability insurance (D&O).  Both Mountain Top and Clark notified General Accident of the lawsuit and requested General Accident to defend and indemnify them pursuant to the D&O policy.  When General Accident refused, Clark brought suit.  Mountain Top intervened, seeking a declaration that the D&O policy provided coverage to Mountain Top and that General Accident was obligated to defend and indemnify it.

General Accident's D&O policy contained language similar to the policy in the case at bar.  Under "Coverage A," General Accident agreed to "pay on behalf of any director or officer all loss which such director or officer shall become legally obligated to pay because of any civil claim arising from a wrongful act as defined in this endorsement."  
Clark
, 951 F. Supp. at 561.  Under "Coverage B," General Accident agreed to "pay on behalf of the named insured all loss which the named insured shall be required or permitted by law to pay as indemnity to any director or officer because of any civil claim arising from a wrongful act as defined in this endorsement."  
Clark
, 951 F. Supp. at 561.

The court held that the language of the policy was plain and unambiguous and that it did not provide coverage to Mountain Top for Mountain Top's defense of the claims against it in the underlying action.  The court also held that the fact that Mountain Top only acted through the actions of its board members did not render Mountain Top and the officers and directors one and the same for purposes of insurance coverage.

The court in 
Clark
 relied upon 
Farmers & Merchants Bank v. Home Insurance Co.
, 514 So. 2d 825 (Ala. 1987), and 
Edinburg Consolidated Independent School District v. St. Paul Insurance Co.
, 783 S.W.2d 610 (Tex. App. 1989).  In 
Farmers & Merchants Bank
, Farmers & Merchants Bank (Farmers) had purchased directors and officers insurance from Home Insurance Company (Home) to protect against monetary loss resulting from the negligence of Farmers' officers or directors.  The policy provided coverage to Farmers' officers and directors under circumstances where Farmers was not required or permitted to indemnify them, and it provided coverage to Farmers for losses sustained by it because of its indemnification of the officers and directors under circumstances where it was required or permitted to indemnify them.  When a suit was brought against Farmers and its officers and directors, Farmers demanded that Home provide the bank and its officers and directors with a defense.  Home refused, taking the position that Farmers was not an insured under the policy, except to the extent that it could indemnify its officers and directors.  Home further informed Farmers that the coverage provided by the policy did not include an assumption by Home of the defense of claims made against the insureds.  Rather, the insureds were to prepare and present their own defense and seek reimbursement for the costs thereof.

Farmers filed a declaratory judgment action asking the trial court to find that Home was obligated to defend Farmers and its officers.  The court held that under the plain language of the policy, Farmers was not an insured and that to the extent that the complaint asserted claims against Farmers, such claims would not be covered.  The court further held that the costs of defense incurred by Farmers would not be covered.

In 
Edinburg Consolidated Independent School District
, St. Paul Insurance Company (St. Paul) had issued a policy that stated that it would pay on behalf of the Edinburg Consolidated Independent School District (District) "any amount it is required or permitted to pay as indemnity to any person insured under the applicable Coverage Plan."  (Emphasis omitted.)  
Edinburg Consolidated Independent School District
, 783 S.W.2d at 611.  The applicable coverage plan insured the members of the board of trustees of the District.  A suit arising from a hand injury suffered by a student was brought against both the trustees and the District.  At the trial of that action, the plaintiffs dismissed their suit against the trustees but continued against the District.  After the dismissal of the trustees, St. Paul withdrew its defense.  The plaintiffs received a favorable judgment, but it was reversed on appeal.

The District filed suit against St. Paul and alleged, 
inter alia
, that it had wrongfully withdrawn from the case.  The District filed a motion for a summary judgment, arguing that a suit against the trustees in their official capacity was equivalent to a suit against the District.  St. Paul also sought a summary judgment on the ground that no claim was made and no suit was filed against any of the named insureds.  The court held that the policy was unambiguous and insured only the trustees.  The court rejected the District's argument that it and the trustees were one and the same for purposes of coverage under the policy.

The policy in the present case is clear and unambiguous.  It describes the type of coverage provided, defines the insureds, and excludes coverage for any claim or legal proceeding against the Bank.  No reasonable construction of the policy language supports the Bank's position, either with respect to the existence of an ambiguity in the policy or KBS's obligation to provide a defense or coverage thereunder.  The trial court properly dismissed the Bank's action.

Having determined that the trial court properly dismissed the Bank's action, we need not address the Bank's argument with respect to section 155 of the Illinois Insurance Code.

For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

MAAG and WELCH, JJ., concur.

                                      

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 08/30/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.