304 So.2d 589

**ALABAMA FARM BUREAU MUTUAL
CASUALTY INSURANCE COM-
PANY, a corporation**

v.

**H. C. TUBBS and Roy E. Corder.**

**SC 821.**

Supreme Court of Alabama.

Dec. 12, 1974.

Zeanah, Donald, Lee & Williams, Tusca-
loosa, for appellant.

Edward F. Morgan, Tuscaloosa, for ap-
pellees.

McCALL, Justice.

Alabama Farm Bureau Mutual Casualty Insurance Company (Farm Bureau), the appellant, filed this suit against the two appellees, H. C. Tubbs and Roy E. Corder, under the Declaratory Judgment Act, Code of Ala., Tit. 7, § 156 et seq. to have determined by the equity court the rights, status, and other legal relations of the parties under an automobile liability policy of insurance which Farm Bureau issued to Tubbs as the named insured and which was in full force and effect when the accident complained of occurred.

Tubbs allegedly negligently damaged the garage and personal property of the appellee Corder by fire, which he set out with a welding torch while underneath his automobile welding a bracket to a rear part of it, near the gas tank. The bracket served to strengthen a hitch that also was attached to the rear of the vehicle. The hitch was a connection between Tubbs' automobile and trailer, and was to be used to pull the trailer. The hitch and brackets

had been on an automobile previously insured by Farm Bureau which Tubbs and his wife traded for the vehicle that was destroyed. Tubbs switched his liability coverage to the second automobile. He had removed the hitch from the former automobile before trading it and had welded the hitch to the new automobile about two weeks before he undertook to weld the brackets into place so as to support the hitch.

The appellee Corder sued Tubbs for the fire damage to his property. Tubbs thereupon called on Farm Bureau, under the policy provision relating to a loss arising out of the maintenance of the automobile, to assume the defense, and to pay, within the policy limits, all s.. ns for which Tubbs might become legally obligated to Corder.

Farm Bureau denied coverage on the ground that the loss did not arise out of the maintenance of the insured automobile. The parties stipulated by written instrument that this issue was the only one in the case. The trial court found against Farm Bureau and it has appealed from the final decree.

The policy insured the automobile, and also a trailer, owned by the named insured, when attached to the insured automobile. When connected, the automobile and trailer became the insured vehicle. This was similar to the insurance situation that existed with Tubbs' former automobile. To constitute the trailer and the automobile an insured unit, the two vehicles had to be connected. The bracket, which Tubbs was welding to the rear of the insured automobile, strengthened the hitch connecting the two vehicles. Clearly, in order to maintain the trailer and the automobile as an insured unit, an attachment or a device of some sort, such as the hitch and the brackets, was contemplated.

The appellant's contention is that welding the hitch and brackets constituted the adding of extraneous equipment to the insured automobile, and was not an act which repaired the vehicle or which would

prevent a decline, lapse or cessation of an existing condition of the vehicle as is contemplated by the definition of the word "maintenance."

In construing the policy contract, we will apply the general rule which is stated in 7 Am.Jur.2d, Automobile Insurance, § 2, p. 293, as follows:

" * * * The policy is to be construed in the light of the subject matter with which the parties are dealing and the purpose to be accomplished, and the language used must be given its ordinary and commonly accepted meaning. The test of the intent of the parties to an automobile insurance policy is the common understanding of men, and since an insurance policy is a contract designed to furnish protection, it should, if reasonably possible, be so construed as to accomplish that objective and not to defeat it. If the language of an automobile policy is reasonably susceptible of different interpretations, the general principle applies that such language will be given the construction most favorable to the insured. * * * "

█ If there is doubt as to the extent or fact of coverage, the language of the policy will be construed in its most inclusive sense for the benefit of the insured. 7 Am.Jur.2d, Automobile Insurance, § 2, p. 294.

In the case of Aetna Casualty & Surety Co. v. Chapman, 240 Ala. 599, 602, 200 So. 425, 426, this court said:

"Policies of insurance being carefully prepared by the insurer, when containing provisions reasonably subject to different constructions, one favorable to the insurer and one favorable to the insured, the construction favorable to the insured shall prevail. As sometimes stated the insured is entitled to the protection which he may reasonably expect from the terms of the policy he purchases." See also McDowell v. United States Fidelity & Guaranty Co., 260 Ala. 412, 417, 71 So.2d 64.

It also has been stated that the public policy of this state requires the broadest possible coverage consistent with the intentions of the parties and the contract between the insured and the insurer. Trans-Continental Mutual Insurance Co. v. Harrison, 262 Ala. 373, 379, 78 So.2d 917.

█ The above rules of construction are not intended to be applied so that the court makes a new or different contract for the parties. Not at all, but at the same time, the function of the court is to construe the contract of the parties so as to follow relevant rules of law that give the insurance protection broad latitude.

The insuring agreement in the policy here is: "To pay all damages which the insured shall become legally obligated to pay because of * * * (B) injury to or destruction of property of others, caused by accident arising out of the * * * maintenance * * * of the automobile." The meaning of maintenance in its present context, is the key to the answer.

54 C.J.S. Maintenance p. 904, defines the word as:

"A large term whose meaning depends on the surrounding circumstances and the connection in which it is applied. Maintenance has been defined as meaning act of maintaining, keeping up, supporting or upholding; or state of being maintained * * * that which maintains or supports."

█ The verb "maintain" has a variety of meanings and connotations. Some significant definitions are: "to supply with means of support," "to supply with what is needed," "to support," "to sustain," "to uphold." Black's Law Dictionary, 4th Edition. We think that the word "maintenance," which is the act of maintaining, should be given one or more of the meanings that will give effect to the purpose of the insurance, which is to afford protection. With this in mind, we consider that Tubbs was supplying his new automobile with the same means of support or with

what was needed in order for it to perform the same function as did his former insured automobile. He was continuing an existing condition that was needed to uphold the automobile's use in his service. We conclude, therefore, that the insured was engaged in maintaining his new automobile, within the terms of the policy's insuring agreement, in the same manner as he had maintained his old one, when he attached the hitch and brackets to it.

The final decree of the trial court is affirmed.

Affirmed.

HEFLIN, C. J., and COLEMAN, BLOODWORTH, and JONES, JJ., concur.