842 P.2d 1335

James THOMAS and Diane Thomas, husband and wife, Plaintiffs Garnishors–Appellees,

v.

LIBERTY MUTUAL INSURANCE CO., Defendant Garnishee–Appellant.

No. 1 CA–CV 89–442.

Court of Appeals of Arizona, Division 1, Department C.

July 9, 1992.

Review Denied Jan. 20, 1993.

Gage & Mathers, Ltd. by G. David Gage, Phoenix, for plaintiffs garnishors-appellees.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Larry L. Smith, Steven D. Smith, Phoenix, for defendant garnishee-appellant.

## OPINION

CONTRERAS, Presiding Judge.

The dispositive question in this appeal is whether the term "maintenance" in an automobile insurance policy includes the named insured's act of providing a family member with the named insured's insurance policy number so that the family member can register a vehicle that is not covered by the policy. We conclude that the meaning of the term "maintenance" does not include such an act. We therefore reverse the trial court's grant of summary judgment in favor of appellees and remand with directions that summary judgment be entered for appellant.

## I. FACTS AND PROCEDURAL HISTORY

The parties do not dispute the material facts. Jason Kartak, who was 18 years old and lived with his mother, Janet Kartak, purchased with his own money a 1971 Ford LTD in January or February of 1986. At that time, Arizona law required the owner of a motor vehicle to certify when registering the vehicle that it was covered by a liability insurance policy or that the owner otherwise complied with state financial responsibility laws. *See* Ariz.Rev.Stat.Ann. ("A.R.S.") §§ 28–1161 through 28–1225 (1989). Although Jason wanted to register the automobile in his name, he had not yet obtained liability insurance. He informed his mother that he needed an insurance policy number so that he could register his automobile. Mrs. Kartak provided Jason with the number of her Liberty Mutual automobile insurance policy, which Jason was going to use to register his automobile. She did not tell her Liberty Mutual Agent or anyone associated with Liberty Mutual that she had provided Jason with her policy number for this purpose.

Jason signed the insurance certification on the vehicle registration form for his automobile, which included his mother's Liberty Mutual policy number, on May 12, 1986. Four days later, in the early evening of May 16, 1986, he was driving his automobile when it struck and killed appellees' five-year-old son, Michael Thomas.

Appellees filed a civil action against Jason to recover damages for the wrongful death of their son. As the result of a *Damron* agreement, Jason made an offer of judgment in the amount of $3,000,000. Appellees accepted the offer, and the trial court entered judgment against Jason alone.[1]

Following entry of the judgment, appellees filed an application for writ of garnishment naming appellant Liberty Mutual as the garnishee-defendant. In its answer to the writ, Liberty Mutual asserted that it was not indebted to Jason.

Appellees objected to Liberty Mutual's answer and moved for summary judgment based on their claim that Liberty Mutual insured Jason's automobile at the time of the accident that resulted in the death of their son. They acknowledged that Jason, while driving his own automobile, ordinarily would not be covered by his mother's Liberty Mutual policy. Appellees argued, however, that the exclusion of Jason was inapplicable due to the exception that afforded coverage if his mother, Mrs. Kartak, provided "maintenance" to a vehicle owned by a family member. Contending that Mrs. Kartak's act of supplying her insurance policy number to her son so that he could register his automobile constituted "maintenance" of his automobile, appellees concluded that the policy covered Jason's use of his automobile at the time of the accident and that Liberty Mutual was therefore bound to pay the judgment against Jason. In response and in its cross-motion for summary judgment, Liberty Mutual argued that the plain, ordinary meaning of "maintenance" would not include Mrs. Kartak's act of providing her policy number to her son in order for him to register his automobile. It also contended that there was no causal connection between the act of providing the policy number to Jason and the accident and that the exception to the policy exclusion therefore could not apply to cover Jason's liability for the accident.

The trial court concluded that Jason Kartak and his vehicle were covered by the Liberty Mutual policy, and it entered partial summary judgment on the "maintenance" issue in appellees' favor. The judgment included Rule 54(b) language, and following denial of its motion for new trial, Liberty Mutual appealed from the judgment and from the order denying its motion for new trial. We have jurisdiction over this appeal pursuant to A.R.S. section 12–2101(B).

## II.  DISCUSSION

The interpretation of an insurance contract, including whether its terms are ambiguous or uncertain, is a question of law for the court to decide. *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 534, 647 P.2d 1127, 1132, *cert. denied*, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982); *Farmers Ins. Co. v. Zumstein*, 138 Ariz. 469, 474, 675 P.2d 729, 734 (App. 1983). This court may interpret an insurance contract independently of the trial court's legal conclusions. *Sparks*, 132 Ariz. at 534, 647 P.2d at 1132; *Phillips v. Flowing Wells Unified Sch. Dist. No. 8*, 137 Ariz. 192, 194, 669 P.2d 969, 971 (App. 1983).

The portions of the insurance policy that must be considered in order to determine whether the Liberty Mutual policy covered Jason at the time of the accident are as follows:

DEFINITIONS

Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations.... [Janet Kartak is the named insured.]

\*  \*  \*  \*  \*  \*

**"Family Member"** means a person related to you by blood, marriage or adoption who is a resident of your household.

\*  \*  \*  \*  \*  \*

---

1. This was the result of some type of *"Damron agreement"* between Jason and the Thomases. *See Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969) (upholding assignment to plaintiffs of insured's claim against insurer for failure to defend liability lawsuit).

PART A—LIABILITY COVERAGE

INSURING AGREEMENT. We [Liberty Mutual] will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident.

\* \* \* \* \* \*

"**Covered person**" as used in this Part means:

1. You or any family member for the ownership, maintenance or use of any auto or trailer.

\* \* \* \* \* \*

EXCLUSIONS. B. We do not provide Liability Coverage for the ownership, maintenance or use of:

\* \* \* \* \* \*

3. Any vehicle, other than **your covered auto,** which is:

 a. owned by any **family member**....

However, this exclusion does not apply to your maintenance or use of any vehicle which is:

 a. owned by a **family member**....

In light of these provisions, the policy would cover Jason, a family member and thus a covered person, when he used his mother's covered automobile. However, it would not cover him when he used his own, uncovered automobile unless the exception to the exclusion applied to him. In this regard, appellees argue that the exception applied because Mrs. Kartak provided "maintenance" to Jason's vehicle by supplying him with her insurance policy number so that he could register his automobile. Liberty Mutual contends that the term "maintenance" does not include such an act.

It is well settled that any ambiguity in an insurance policy will be construed against the insurer. *Beaugureau v. Equitable Life Assurance Soc'y,* 132 Ariz. 596, 598, 647 P.2d 1194, 1196 (App.1982). This is particularly true if the ambiguity involves an exclusionary clause. *Security Ins. Co. v. Andersen,* 158 Ariz. 426, 428, 763 P.2d 246, 248 (1988). This rule applies, however, only if a provision is actually ambiguous. *Id.* As the *Andersen* court stated:

> Where the policy language is clear, a court may not take "the easy way out" by ·inventing ambiguity, and then resolving it to find coverage where none exists under the policy.... [A] "court should not attempt to revise the policy to increase the risk or extend liability just to accomplish a so-called good purpose."

*Id.* (citations omitted) (quoting *Stearns–Roger Corp. v. Hartford Accident & Indem. Co.,* 117 Ariz. 162, 165, 571 P.2d 659, 662 (1977)).

 Furthermore, in construing a term in an insurance policy that on its face is not ambiguous, we must interpret it according to its ordinary meaning and effect. *Mid–Century Ins. Co. v. Duzykowski,* 131 Ariz. 428, 430, 641 P.2d 1272, 1274 (1982); *Rodemich v. State Farm Mut. Auto. Ins. Co.,* 130 Ariz. 538, 539, 637 P.2d 748, 749 (App.1981). In other words, we should examine the language from the standpoint of a person not trained in law or in the insurance business. *Sparks,* 132 Ariz. at 534, 647 P.2d at 1132.

It is acknowledged by the parties that the meaning of the term "maintenance" in an automobile insurance policy has not yet been interpreted in Arizona case law. However, courts in other jurisdictions have interpreted the term. An early determination of the meaning of the term "maintenance" in an insurance policy was made in *Morris v. American Liability & Surety Co.,* 322 Pa. 91, 185 A. 201 (1936). In deciding that the repair of a truck tire constituted "maintenance," the *Morris* court stated:

> The word "maintenance," used in this policy, covers all acts which come within its ordinary scope and meaning. To "maintain" means to preserve or keep in an existing state or condition and embraces acts of repair and other acts to prevent a decline, lapse, or cessation from that state or condition. In a wide variety of situations the word "maintain" has been taken to be synonymous with "repair." This is the usual meaning, the dictionary meaning, and the meaning

which must control in the absence of a clear expression of a contrary intention. *Id.* at 94–95, 185 A. at 202 (citations omitted).

The court in *Wall v. Windmann,* 142 So.2d 537 (La.App.1962), used the *Morris* definition of "maintenance" as well as the dictionary's definition of maintenance as "the upkeep of property, machinery, equipment, etc." to conclude that making adjustments to a new pickup truck to ready it for delivery to the purchaser constituted maintenance. In another Louisiana case, *Chase v. Dunbar,* 185 So.2d 563 (La.App.1966), the court held that attempting to start a car by putting gasoline into the carburetor was maintenance.

The court in *State Farm Mutual Automobile Insurance Co. v. Pan American Insurance Co.,* 437 S.W.2d 542 (Tex.1969), also cited the *Morris* definition of maintenance and concluded that refueling a vehicle constituted maintenance, stating:

> It appears inescapable that the replacement of fuel which has been exhausted with use and without which a motor vehicle is inoperative, is a species of maintenance in the same sense as repairing the carburetor as a part of the fuel system, or inflating a flat tire, or changing the oil in the crankcase of the engine. The only purpose of the act of refueling ... was to capacitate the ... vehicle to perform its transportation functions. This act, standing alone, constituted "maintenance" of the vehicle....

*Id.* at 545.

In *Truck Insurance Exchange v. Aetna Casualty & Surety Co.,* 13 Wash.App. 775, 778, 538 P.2d 529, 532 (1975), the court determined that maintenance was "the labor of keeping something (as buildings or equipment) in a state of repair or efficiency" and concluded that a mechanic's act of starting the motor while performing a tune-up was a part of the servicing or maintenance of the vehicle. See also *Michigan Bell Telephone Co. v. Short,* 153 Mich.App. 431, 395 N.W.2d 70 (1986) (regular cleaning and waxing of trucks constituted normal maintenance service); *Liberty Mutual Insurance Co. v. Allied Truck Equipment Co.,* 103 Mich.App. 33, 302 N.W.2d 588 (1981) (work to correct a carburetor flooding problem caused by installation of an auxiliary gas tank was maintenance); *Alabama Farm Bureau Mutual Casualty Insurance Co. v. Tubbs,* 293 Ala. 432, 304 So.2d 589 (1974) (attaching a trailer hitch and bracket to a replacement vehicle was continuing an existing condition and thus was maintenance); 6B John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 4315 (1979) ("The term maintenance would seem to include acts of either commission or omission relative to the external or mechanical condition of a vehicle.").

Appellees have not cited, and we have not found, any case in which "maintenance," as used in an insurance policy in reference to a vehicle, has been interpreted to include an act other than one performed physically to the vehicle to repair it, make it physically operational, or to continue its desired appearance or mechanical condition. Furthermore, we believe that the ordinary meaning that an average person would give to the term "maintenance," as used in the Liberty Mutual policy, is an act done to keep or place a vehicle in a physical state of repair, good condition, or efficient operation. Thus, we conclude that "maintenance" does not include the act of providing an insurance policy number for the purpose of registering a vehicle not covered by the policy. That act simply and reasonably has no relation to the ordinary and unambiguous meaning of "maintenance." Accordingly, we decline to find any ambiguity in the term or to stretch the term "maintenance" to include an act that clearly is not intended by the term or contemplated in the situations for which the insurer contracted to provide coverage.

Appellees point out that the Texas Supreme Court in *State Farm v. Pan American* found that refueling is maintenance because the purpose of refueling is to "capacitate the ... vehicle to perform its transportation function[ ]." 437 S.W.2d at 545. From this, they argue that just as a vehicle requires fuel to perform its transportation function, a vehicle operating in

Arizona requires proof of insurance. They then conclude that Mrs. Kartak's act allowed Jason to continue to operate the vehicle and thus can be construed as "maintenance" of the vehicle by Mrs. Kartak.

We do not agree with this argument. Although a motor vehicle must be registered in order to be operated legally in Arizona, it is clear beyond argument that a vehicle can physically operate and perform its transportation function without being registered. In fact, it appears from the record that Jason had driven his automobile for a few months while it was still registered in the previous owner's name. It was not Mrs. Kartak's act that allowed Jason to continue to operate the vehicle. The automobile was physically operable, and the lack of registration in Jason's name did not change that status. The act of providing an insurance policy number to enable a vehicle to be registered simply does not "capacitate the ... vehicle to perform its transportation function[ ]" such that the act can be considered to be maintenance of the vehicle.

Liberty Mutual also argues that even if Mrs. Kartak's act of providing the policy number constituted maintenance, summary judgment should have been entered in its favor because there was no causal connection between the maintenance and the accident. It also argues that even if the exception to the exclusion applied, it applied only to provide coverage to Mrs. Kartak if she drove Jason's automobile, not to cover Jason when he drove his own, uncovered automobile. Since we have concluded that Mrs. Kartak did not provide maintenance to Jason's vehicle and thus that the exception does not apply, we need not reach these additional issues presented by Liberty Mutual.

In summary, we conclude that Jason's use of his own automobile was not covered by his mother's Liberty Mutual policy and that his mother's act of providing Jason with her automobile insurance policy number so that he could register his automobile did not constitute "maintenance" for purposes of the exception to the policy exclusion. Accordingly, the Liberty Mutual policy did not cover Jason or his automobile for the accident. We therefore reverse the trial court's grant of summary judgment in favor of appellees. Since we have concluded, as a matter of law, that the policy did not provide coverage for the accident, we remand for entry of judgment in favor of Liberty Mutual.

Liberty Mutual requests an award of its attorneys' fees incurred on appeal pursuant to A.R.S. section 12–341.01. In our discretion, we deny this request.

McGREGOR and FIDEL, JJ., concur.