Honorable Diane J. Humetewa, United States District Judge
This insurance coverage dispute is before the Court on cross-motions for summary judgment. Plaintiff, 757BD LLC ("757BD"), has moved for summary judgment, arguing that Defendant, National Union Fire Insurance Company of Pittsburgh ("National"), breached its contractual duty to defend and indemnify its insured, Aero Jet Services, LLC ("Aero Jet"), in connection with a lawsuit by 757BD against Aero Jet. (Doc. 60). National has cross-moved for summary judgment/partial summary judgment, arguing that it had no obligation to defend or indemnify Aero Jet on the claims against it by 757BD. (Doc. 62). Each party has filed separate statements of facts supporting their Motions (Docs. 61 and 63) and controverting statements of facts in response to the opposing party's facts. (Docs. 67 and 69). National filed a Response in Opposition to Plaintiff's Motion and a Reply in Support of its Motion. (Docs. 68 and 73). 757BD filed a Response to Defendant's Motion and a Reply Memorandum in Support of Plaintiff's Motion. (Docs. 66 and 72).[1]
This Court now denies 757BD's Motion for Summary Judgment and grants National's Motion for Summary Judgment.
I. Background
The issue in this case arises out of a January 11, 2005, Aircraft Purchase Agreement for a 1989 Astra Jet aircraft. (Doc. 61 ¶ 3; Doc. 69 ¶ 3; Doc. 61-3). Plaintiff 757BD was the purchaser and non-party Brett Jet, LLC ("Brett Jet") was the seller. (Doc. 61 ¶ 3; Doc. 69 ¶ 3). Aero Jet is a company that "manages, maintains and operates aircraft owned by other[s]." (Doc. 61 ¶ 5; Doc. 69 ¶ 5). Defendant National issued two Gold Medallion Comprehensive Business Aircraft insurance policies *1146 to Aero Jet. (Doc. 61 ¶¶ 1, 2; Doc. 69 ¶¶ 1, 2; Doc. 61-1; Doc. 61-2). Plaintiff 757BD seeks insurance coverage from National for its claims against Aero Jet. (Doc. 1-1).
A. Aircraft Purchase and Corrosion Discovery
Pursuant to a January 11, 2005, Aircraft Purchase Agreement, Plaintiff 757BD agreed to purchase, and Brett Jet agreed to sell, a 1989 Astra Jet Aircraft (the "Aircraft"). The Aircraft Purchase Agreement was "subject to an Inspection and test flight of the aircraft to occur on or before January 21, 2005." (Doc. 61-3, Article 3). Following the test flight, 757BD was to "either reject the condition of the Aircraft or accept the condition of the Aircraft." (Id. ) Plaintiff states that, on or around January 17, 2005, "before 757BD took delivery of the Aircraft," an Aero Jet mechanic "looked at and reviewed the Aircraft for and on behalf of 757BD." (Doc. 61 ¶ 6).
On January 21, 2005, 757BD and Aero Jet entered into a Management Services Agreement under which Aero Jet would provide services, including maintenance services for the Aircraft, to 757BD. (Doc. 61 ¶¶ 9, 10; Doc. 69 ¶¶ 9, 10). The Aircraft was delivered to Aero Jet's facilities that same day, January 21, 2005. (Doc. 61 ¶ 8; Doc. 69 ¶ 8).
....
On November 1, 2005, during a routine inspection, Aero Jet discovered bubbling paint on the Aircraft's wing surfaces. (Doc. 61 ¶ 12; Doc. 69 ¶ 12). Based on the bubbling paint, Aero Jet informed 757BD that there was corrosion on the Aircraft and that inspection was needed. (Doc. 61 ¶ 13; Doc. 69 ¶ 13). The corrosion was found to have damaged the wing panels by consuming the metal and by compromising the Aircraft's structural integrity. (Doc. 61 ¶ 20; Doc. 69 ¶ 20). Expert analysis suggested that the corrosion was caused by "exposure to chloride-based paint stripper when the Aircraft was repainted in 2002 by Duncan Aviation." (Doc. 61 ¶ 18; Doc. 69 ¶ 18). 757BD alleges that repair and maintenance costs in connection with the Aircraft were $865,935.86 and that it "lost income and incurred other damages as a result of the loss of use of the Aircraft while repairs were being made." (Doc. 61 ¶¶ 21, 22).
B. The Insurance Contract
National, as insurer, issued to Aero Jet, as insured, two Gold Medallion Comprehensive Business Aircraft policies. (Doc. 61-1; Doc. 61-2). The first policy, GM 1853858-01, was effective from January 30, 2005, through April 30, 2006. (Doc. 63 ¶ 35; Doc. 67 ¶ 35). The second policy, GM 1853858-02, was effective from April 30, 2006, through April 30, 2007. (Id. ) The Aircraft was considered a "scheduled" aircraft under both policies. (Doc. 63 ¶¶ 36, 37; Doc. 67 ¶¶ 36, 37).
Both policies, under "Coverage A - Liability for Scheduled Aircraft," state:
The Company will promptly pay on behalf of the insured all sums which the insured becomes legally obligated to pay as damages because of bodily injury and property damage caused by an occurrence during the policy period arising out of the ownership, maintenance or use of a scheduled aircraft.
(Doc. 63 ¶ 38; Doc. 67 ¶ 38; Doc. 61-1 at 9).
Both policies' relevant definitions state:
"Property Damage" means accidental damage to or destruction of the tangible property of others caused by an occurrence during the policy period and the resultant loss of use of the property. Property damage also includes the loss of use of the tangible property of others that is not physically damaged but that is caused by an occurrence during the policy period.
*1147 (Doc. 63 ¶ 39; Doc. 67 ¶ 39; Doc. 61-1 at 21).
"Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended by the insured. However, the definition will include bodily injury or property damage resulting from the efforts to prevent dangerous interference with any covered aircraft operations.
(Doc. 63 ¶ 40; Doc. 67 ¶ 40; 61-1 at 20).
C. Superior Court Litigation
On May 30, 2008, 757BD brought suit in Maricopa County Superior Court against Duncan Aviation, Brett Jet, and Aero Jet (the "Underlying Action"). (Doc. 61-5 at 45). Brett Jet was dismissed from the Underlying Action based on lack of personal jurisdiction. (Doc. 63 ¶ 45; Doc. 67 ¶ 45). Duncan was dismissed from the Underlying Action pursuant to a $225,000 settlement agreement. (Doc. 63 ¶¶ 46, 47; Doc. 67 ¶¶ 46, 47).
Claims against Aero Jet included Count VI for Breach of Contract; Count VII for Breach of Implied Covenant of Good Faith and Fair Dealing; Count VIII for Breach of Fiduciary Duty; and Count IX for Fraud, Misrepresentation, and/or Negligent Misrepresentation. (Doc. 61-5 at 52-54). Count VIII for Breach of Fiduciary Duty focused on Aero Jet's alleged actions as the broker of the sale of the Aircraft; specifically, it alleged:
65. Defendant Aero Jet brokered the sale between Plaintiff 757BD and Defendant Brett Jet.
66. As the broker, Defendant Aero Jet owed a fiduciary obligation to obtain and disclose all material information to Plaintiff 757BD.
67. Defendant Aero Jet was aware of the repairs and paint job performed by Defendant Duncan and knew or should have known of the Aircraft's true condition.
68. Defendant Aero Jet failed to provide such material information to Plaintiff 757BD.
69. As a result of Aero Jet's breach of fiduciary duty, Plaintiff 757BD sustained significant damage.
(Doc. 61-5 at 53-54).
....
Count IX for Fraud, Misrepresentation, and/or Negligent Misrepresentation similarly focused on alleged misrepresentations by Aero Jet, which allegedly led to 757BD's purchase of the Aircraft; Count IX states:
71. Defendant Aero Jet knew or should have known of the Aircraft's true condition and of Defendant Duncan's work performed on the Aircraft.
72. Defendant Aero Jet represented to Plaintiff 757BD that the Aircraft was in normal working condition.
73. Defendant Aero Jet provided Plaintiff 757BD with logs, service manuals and records reflecting that the Aircraft was in a normal working condition.
74. However, the Aircraft was not in a normal working condition, but rather in an excessively corrosive condition.
75. By representing to Plaintiff 757BD that the Aircraft was in a normal working condition, Defendant Aero Jet intended for Plaintiff 757BD to purchase the Aircraft despite the fact that it was in a state of excessive corrosion.
76. Plaintiff 757BD, unaware of the Aircraft's true condition, reasonably relied on Defendant Aero Jet's *1148 material misrepresentation and purchased the Aircraft.
77. As a result of Defendant Aero Jet's misrepresentation, Plaintiff 757BD sustained significant damage.
(Doc. 61-5 at 53-54).
National denied coverage and declined to defend Aero Jet based upon asserted lack of "property damage," lack of an "occurrence," lack of a triggering event during the policy period, and applicability of a care, custody or control exclusion. (Doc. 63 ¶ 44; Doc. 67 ¶ 44).
On February 29, 2012, in the Underlying Action, 757BD and Aero Jet submitted a Stipulation Regarding Entry of Judgment Against Aero Jet. (Doc. 63 ¶ 49; Doc. 67 ¶ 49). The Stipulation provided that the superior court could enter judgment in favor of 757BD and against Aero Jet "based on the breach of fiduciary duty cause of action (Count VIII of the Complaint) and the negligent misrepresentation cause of action (Count IX of the Complaint)." (Id. ) In the superior court's March 5, 2012, judgment, the court directed entry of judgment in favor of 757BD and against Aero Jet in the amount of $591,496.61. (Doc. 63 ¶ 50; Doc. 67 ¶ 50). This stipulated judgment and subsequent order of judgment were entered pursuant to an agreement between 757BD and Aero Jet under which Aero Jet assigned to 757BD all of its rights, claims, and causes of action against National, in exchange for 757BD's agreement not to execute on the judgment against Aero Jet. (Doc. 61 ¶ 30; Doc. 63 ¶ 48).
D. District Court Litigation
On February 19, 2014, 757BD filed a declaratory judgment action against National in Maricopa County Superior Court. (Doc. 1-1). The action was subsequently removed to federal district court. (Doc. 1). Plaintiff filed an Amended Complaint on October 7, 2016. (Doc. 38). The Amended Complaint alleges two counts against Defendant: Count One for Declaratory Judgment and Count Two for Breach of Contract. (Doc. 38 at 4-5). The parties have now filed cross-motions for summary judgment regarding National's insurance coverage obligations. (Doc. 60; Doc. 62).
II. Legal Standards
Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) ; see Celotex Corp. v. Catrett , 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ; Jesinger v. Nevada Fed. Credit Union , 24 F.3d 1127, 1130 (9th Cir. 1994). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The dispute must also be "genuine... such that a reasonable jury could return a verdict for the nonmoving party." Id. Furthermore, "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." Nelson v. Pima Community College , 83 F.3d 1075, 1081-82 (9th Cir.1996)
"Summary judgment is particularly appropriate to resolve questions of insurance coverage, since the interpretation of a written contract is a matter of law to be determined by the court." Bedoya v. Travelers Prop. Cas. Co. of Am. , 773 F.Supp.2d 1326, 1328 (M.D. Fla. 2011) ; see also Rose Acre Farms, Inc. v. Columbia Cas. Co. , 772 F.Supp.2d 994, 999 (S.D. Ind. 2011).
....
III. Discussion
In Arizona, an insurance contract is interpreted "according to its plain and ordinary meaning, examining it from the viewpoint of an individual untrained in law *1149 or business." Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co. , 225 Ariz. 194, 236 P.3d 421, 427 (Ariz. Ct. App. 2010). "Ambiguity in an insurance policy will be construed against the insurer." Keggi v. Northbrook Prop. and Cas. Ins. Co. , 199 Ariz. 43, 13 P.3d 785, 788 (Ariz. Ct. App. 2000) (quoting Thomas v. Liberty Mut. Ins. Co , 173 Ariz. 322, 842 P.2d 1335, 1338 (Ariz. Ct. App. 1992) ). "Generally, the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion." Keggi , 13 P.3d at 788.
A Damron agreement is "a settlement agreement between an insured and an injured party in circumstances where the insurer has declined to defend a suit against the insured." Desert Ridge Resort LLC v. Occidental Fire & Cas. Co. , 141 F.Supp.3d 962, 966 (D.Ariz. 2015) (quoting Quihuis v. State Farm Mut. Auto. Ins. Co. , 748 F.3d 911, 912 n.2 (9th Cir. 2014) ). Under the terms of the agreement, "the insured agrees to liability for the underlying incident and assigns all rights against the insurance company to the injured party." Id. "The insurer, in turn, generally may contest any duty to indemnify by asserting that its policy did not cover the accident or claim." Quihuis v. State Farm Mut. Auto Ins. Co. , 235 Ariz. 536, 334 P.3d 719, 722 (2014). A Damron agreement does not "create coverage that the insured did not purchase.... To the contrary, [the insurer] is liable for the stipulated judgment only if the judgment constituted a liability falling within its policy." Desert Ridge Resort, 141 F.Supp.3d at 966-67 (emphasis added) (quoting Col. Cas. Ins. Co. v. Safety Control Co. , 230 Ariz. 560, 288 P.3d 764, 771 (Ariz. Ct. App. 2012) ).
In this case, there is no coverage under the policy because there was no "property damage" under the terms of the insurance policies and because there was neither an "accident" nor an "occurrence" under the terms of the policies. Similarly, National had no duty to defend the suit because, even on the breach of contract and breach of the duty of good faith and fair dealing claims, there were no allegations supporting the conclusion that an occurrence caused property damage.
The policies define property damage as "accidental damage to or destruction of the tangible property of others caused by an occurrence during the policy period and the resultant loss of use of the property." (Doc. 63 ¶ 39; Doc. 67 ¶ 39; Doc. 61-1 at 21). This definition does not encompass economic loss based upon either misrepresentation regarding the pre-sale condition of the property or breach of fiduciary duty arising out of failing to disclose the pre-sale condition of the property. See Safeco Ins. Co. v. Andrews , 915 F.2d 500, 502 (9th Cir. 1990) (finding no property damage under insurance contract for claims based upon seller's alleged misrepresentation of the property's condition); Am. Family Mut. Ins. Co. v. Craig , 2009 WL 10673964, at *4 (D. Ariz. 2009) (finding that alleged misrepresentations and breach of contract regarding property's condition did not result in property damage, but instead resulted in economic injury); Raines v. Safeco Ins. Co. of Am. , 637 F.3d 872, 876 (8th Cir. 2011) ("underlying claim alleging negligent misrepresentation exposes the defendant to liability for economic loss, not damage to tangible property"); St. Paul Fire & Marine Ins. Co. v. Cypress Fairway Condominium Assoc. , 114 F.Supp.3d 1231, 1239 (M.D. Fla. 2015) (holding that "representations about the state of the buildings did not cause water intrusion and the resultant property damage"). As the Ninth Circuit found, if an insured's liability is based upon misrepresentation regarding the condition *1150 of property, that liability is for economic loss caused by the insured's failure to disclose. Andrews , 915 F.2d at 502 (stating "[the purchaser's] claims do not expose [the seller] to liability for any damage to tangible property, but rather for economic loss resulting from [the seller's] alleged failure to discover and disclose facts relevant to the property's value and desirability"). Because the liability is for the economic loss due to misrepresentation, not for the damage to the property, there is no coverage for property damage under the policy. See id.
Notably, in assessing whether there is coverage under an insurance policy for property damage caused by an occurrence, the Court must consider the specific claims against the insured and must determine whether those claims caused the alleged injury; in other words, for there to be coverage, the specific claims against the insured must have led to the alleged property damage. See Andrews , 915 F.2d at 501-02 (examining the claims against the insured to determine whether there was coverage for alleged property damage); American Family Mut. Ins. Co. v. Craig , 2009 WL 10673964 (D. Ariz. 2009). For example, in Craig , the insureds sold a home and, in connection with the sale, indicated that they were not aware of any roof leaks, problems, or repairs. 2009 WL 10673964, at *1. After the sale was complete, the buyers learned that there was roof leakage caused by snow blowing into the roof vents. Id. at *4. The buyers sued the sellers for misrepresentation, breach of contract, and rescission of the sales contract. Id. at *1. The buyers sought coverage under the sellers' personal liability policy, which provided coverage for "property damage caused by an occurrence." Id. at *1-2. The buyers argued that the incident "giving rise to the litigation" was the "roof leakage caused by snow blowing into the roof vents." Id. at *4. The court disagreed, based upon the nature of the allegations against the insured sellers:
[T]he [buyers'] claims are not based on the entry of snow into the roof vents. The claims alleged in the complaint are based on the [sellers'] alleged misrepresentations in connection with the sale of the property. The alleged harm is not damage caused by the snow and wind; the [buyers] allege that they were harmed by the [sellers'] misrepresentations and breach of contract.
Id. at *4 (emphasis added). Therefore, even though there was damage to the property, because the sellers' actions, as alleged in the complaint, did not cause the property damage, there was no insurance coverage. Id. at *4.
Under the terms of the Stipulation Regarding Entry of Judgment in the Underlying Action, judgment was entered against Aero Jet on Count VIII, based upon breach of fiduciary duty, and on Count IX, based upon negligent misrepresentation. (Doc. 61-5 at 27-28). Neither Count VIII nor Count IX contained allegations supporting the argument that property damage was caused by either the breach of fiduciary duty or the negligent misrepresentation. Instead, the allegations of both counts focused on Aero Jet's actions as the alleged broker for the sale of the Aircraft, on 757BD's reliance on Aero Jet when 757BD purchased the Aircraft, and on 757BD's financial losses as a result of the breach of fiduciary duty and misrepresentation. For example, Count VIII for breach of fiduciary duty alleged that Aero Jet brokered the sale, that "[a]s the broker, Defendant Aero Jet owed a fiduciary obligation to obtain and disclose all material information to Plaintiff 757BD," that Aero Jet knew of the repair and knew or should have known of the Aircraft's true condition, that Aero Jet failed to provide that material information, and that 757BD
*1151 sustained significant damage as a result of this breach of fiduciary duty. (Doc. 61-5). Similarly, Count IX for misrepresentation alleged that Aero Jet knew or should have known of the Aircraft's true condition; that, "[b]y representing to Plaintiff 757BD that the Aircraft was in a normal working condition, Defendant Aero Jet intended for Plaintiff 757BD to purchase the Aircraft despite the fact that it was in a state of excessive corrosion," and that "Plaintiff 757BD, unaware of the Aircraft's true condition, reasonably relied on Defendant Aero Jet's material misrepresentation and purchased the Aircraft." All of these allegations reflect the claim that 757BD suffered an economic loss due to the alleged misrepresentation and breach of fiduciary duty. As reasoned by the Craig court, the harm here is not the damage to the airplane caused by the corrosion; instead, the alleged harm is the misrepresentation and breach of fiduciary duty. Therefore, because the policy covers only property damage and there was no alleged property damage in this case that was caused by the insured's actions, there is no duty to indemnify.[2]
There is particularly no duty to indemnify for Counts VIII and IX because the allegations in those counts address events regarding the sale of the Aircraft, which all took place before the effective date of the insurance policies. The Aircraft Purchase Agreement was dated January 11, 2005; the Aircraft was allegedly inspected and test-flown by an Aero Jet representative on January 17, 2005; Aero Jet and 757BD entered into an Aircraft services agreement on January 21, 2005; and the Aircraft was delivered to Aero Jet on January 21, 2005. While the Complaint does not specify the date of the alleged misrepresentations, because the purchase must have been complete before the Aircraft was delivered to Aero Jet to maintain for 757BD on January 21, 2005, the alleged misrepresentations and breach of fiduciary duty leading to the sale must have occurred by that time. The first policy, however, was not effective until January 30, 2005. Therefore, because the policy only covers property damage "caused by an occurrence during the policy period," even if the damages caused by the alleged misrepresentation and breach of fiduciary duty could somehow be construed as "property damage," that damage occurred before the policy's effective date and there is no coverage.
Last, there was also no duty to defend Aero Jet under the insurance policy. To determine whether there is a duty to defend Aero Jet, the Court must consider the legal claims against Aero Jet. See Teufel v. American Family Mutual Ins. Co. , 244 Ariz. 383, 419 P.3d 546, 548-49 (2018). The duty to defend, which is broader than the duty to indemnify, "generally arises if the complaint filed against the insured alleges facts that fall within the policy's coverage." Id. at 548. "[I]f any claims fall within policy coverage, the insurer must defend against all claims, including claims potentially not covered and *1152 those that are groundless, false, or fraudulent." Id. at 549 (internal quotations omitted). In the Underlying Action, Aero Jet admitted liability for Breach of Fiduciary Duty and for Fraud, Misrepresentation, and/or Negligent Misrepresentation. (Doc. 61-5 at 27-28). As discussed above, there is no coverage for these claims because the claimed property damage was not a result of the misrepresentations and breach of fiduciary duty. Consistent with this, because the lack of coverage was apparent from the allegations in the Complaint, there was no duty to defend based on these claims.
....
In the Complaint, there were two additional claims against Aero Jet: Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing. (Doc. 61-5 at 52-53). There was also no duty to defend based upon these claims. The Breach of Contract claim was based upon alleged failure to provide 757BD with logs and records in connection with operation and maintenance of the Aircraft, particularly the "records and reports pertaining to Defendant Duncan's repairs and paint job on the Aircraft." (Doc. 61-5 at 52 ¶ 55). The Breach of the Implied Covenant of Good Faith and Fair Dealing claim similarly focused upon Aero Jet's alleged failure "to disclose its knowledge of the repairs and paint job performed by Defendant Duncan and its knowledge of the Aircraft's true condition." (Doc. 61-5 at 53 ¶ 62).
There is first no duty to defend these claims because they are breach of contract claims, which generally do not fit within the definition of occurrence under an insurance policy. In the policy, "occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended by the insured." Because a breach of contract is typically not an accident, there can be no occurrence, and, therefore, there is no coverage. See RTR Builders Inc. v. Savard , 631 Fed. Appx. 452, 453 (9th Cir. 2015) (finding that, when general contractor stopped building and did not complete home construction, there was no duty to defend because the contractor's "affirmative decision to stop work was not an 'occurrence' "); Kema Steel, Inc. v. Home Ins. Co. , 153 Ariz. 315, 736 P.2d 798, 800 (Ariz. Ct. App. 1986) (finding that "failure to provide the alleged promised coverage was not an accident within the meaning of the policy even though it caused 'emotional distress' " because "[i]t was a breach of contract").
Citing Desert Mountain Properties Limited Partnership v. Liberty Mutual Fire Insurance Co. , 225 Ariz. 194, 236 P.3d 421 (Ariz. Ct. App. 2010), Plaintiff argues that there is nevertheless a duty to defend the breach of contract claim and the related breach of the covenant of good faith and fair dealing claim. (Doc. 66 at 9). In Desert Mountain , a property developer sought coverage, under its commercial general liability policy, for the costs of repairing construction defects in a housing development. Id. at 425-26. The court "decline[d] to hold that as a matter of law, a CGL policy does not cover liability arising out of contract." Id. at 431. It stated that the "proper inquiry is whether an occurrence has caused property damage, not whether the ultimate remedy for that claim lies in contract or in tort." Id. (internal quotations omitted).
Here, neither the breach of contract nor the breach of the covenant of good faith and fair dealing claims can be said to have "caused property damage." Both claims focus on Aero Jet's alleged failure to provide records of Duncan's paint work to 757BD. This alleged failure to provide records regarding Duncan's work, even if it was a breach of contract, was not "an occurrence *1153 that caused property damage." First, failure to provide records cannot be considered to be an "accident." See Craig , 2009 WL 10673964, at *3. Therefore, because the failure was not an "accident," there was no occurrence. Second, even if the failure to provide records could be construed as an occurrence, that failure to provide records on the deficient paint work did not cause property damage. Instead, the deficient paint work itself caused the property damage.[3] Last, even assuming that the damage worsened over time, including into the time of the Aircraft Maintenance Agreement, because the property damage was not caused by the failure to provide records, there could be no coverage for the breach of contract claim and there was accordingly no duty to defend on any of the claims.[4]
....
....
....
IV. Conclusion
Based on the foregoing,
IT IS ORDERED denying Plaintiff 757BD's Motion for Summary Judgment. (Doc. 60).
IT IS FURTHER ORDERED granting Defendant National's Motion for Summary Judgment. (Doc. 62).
IT IS FINALLY ORDERED that the Clerk of Court shall enter judgment in favor of Defendant and against Plaintiff, and shall terminate this matter.

Both parties requested oral argument on this matter. The Court denies the request because the issues have been fully briefed and oral argument will not aid the Court's decision. See Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

In addition to there being no "property damage" pursuant to the terms of the policy, there is also no "accident" or "occurrence" under the terms of the policy. Misrepresentations are not considered an "occurrence." Craig , 2009 WL 10673964, at *3. Further, intentional actions, such as "alleged misrepresentations and breach of contract cannot be characterized as an 'accident' and do not fall within the definitions of an 'occurrence' under the policies." Id. at *4 (finding no accident under policy for alleged misrepresentations and breach of contract regarding structural and roof leakage issues in context of home sale); see also Great American Assurance Co. v. PCR Venture of Phoenix LLC , 2014 WL 11497799, at *6-7 (D. Ariz. 2014) (holding that car rental agent's alleged promise of supplemental liability insurance was not an "accident").

This is especially true in light of the allegations of the Complaint in the Underlying Action, which indicated that, at the time of the sale, before the Maintenance Agreement was in effect, the Aircraft was already in "an excessively corrosive condition." (Doc. 61-5 at 54, ¶ 74).

757BF claims that there is coverage, stating "When the relevant property damage and occurrence are properly characterized, it is abundantly clear that the condition of corrosion (occurrence) caused property damage (loss of structural integrity and loss of use of the Aircraft) during the period of the Policies." (Doc. 72 at 8). Even taking this statement as true, however, there was still no duty to defend because Aero Jet's alleged failure to provide records regarding Duncan's paint work did not cause the corrosion; therefore, the property damage cannot be attributed to the alleged actions by Aero Jet.